The AMERICAN FREEDOM TRAIN
FOUNDATION, etc.,
Plaintiff, Appellant,

v.

Peter L. SPURNEY, et al.,
Defendants, Appellees.

No. 84–1438.

United States Court of Appeals,
First Circuit.

Argued Sept. 12, 1984.
Decided Nov. 8, 1984.

Patrick W. Crowley, Seattle, Wash., with whom Charles R. Lonergan, Jr., Raymond H. Siderius, Siderius, Lonergan & Crowley, Seattle, Wash., Desmond Sullivan, Peter Sultan, and Hoag & Sullivan, Boston, Mass., were on brief, for plaintiff, appellant.

John J. Curtin, Jr., Boston, Mass., with whom Robert E. McDonnell, Bingham, Dana & Gould, Harvey Weiner, Peabody & Arnold, Boston, Mass., Robert T. Johnson, D. Scott Hargadon, and Bell, Boyd & Lloyd, Chicago, Ill., were on brief, for defendants, appellees Thomas Allsopp, Vincent C. Burke, Jr., John C. Cornelius, William S. Field, J.J. MacDonald, George A. Peapples, and Alan M. Pottash.

Harvey Weiner, Boston, Mass., with whom Peabody & Arnold, John J. Curtin, Jr., Robert E. McDonnell, Bingham, Dana & Gould, Boston, Mass., Robert T. Johnson, D. Scott Hargadon, and Bell, Boyd & Lloyd, Chicago, Ill., were on brief, for defendants, appellees H. Keith Ridgway, and Gordon Edwards.

John Wall, Harry C. Mezer, and Cullen & Wall, Boston, Mass., were on brief, for defendant, appellee Howard S. Epstein.

Before COFFIN, Circuit Judge, ALDRICH and COWEN,* Senior Circuit Judges.

*Of the Federal Circuit, sitting by designation.

COWEN, Senior Circuit Judge.

This is an appeal from a judgment of the district court, which dismissed appellant's (plaintiff's) complaint on the ground that the court lacked jurisdiction. Plaintiff is the receiver of The American Freedom Train Foundation, Inc. (AFTF), a dissolved Massachusetts charitable corporation. The receiver brought this action against AFTF's former officers and directors (defendants) seeking to recover damages stemming from an alleged breach of their fiduciary duties which resulted in an antitrust judgment being rendered against AFTF by a federal district court in Washington. Since we agree with the district court's alternative holding that it had no jurisdiction, we affirm.

## I. *Background*

AFTF was organized in 1972 to operate a steam-powered museum train (Freedom Train) which would stop to show its exhibits in each of the 48 contiguous United States in 1975–76 in commemoration of the American Bicentennial. The train began its run in Wilmington, Delaware on April 1, 1975, and it stopped in three locations in Massachusetts between April 20 and May 5, 1975.

In November 1975, the Ace Novelty Co. (Ace), a Washington corporation in the business of selling souvenir and novelty items, brought an antitrust suit against AFTF in the District Court for the Western District of Washington. Ace alleged that AFTF conspired with its exclusive concessionaires in violation of the Sherman Act by unfairly restraining Ace from selling concession items in the vicinity of the Freedom Train. The anticompetitive practices complained of by Ace were alleged to have begun in "approximately July" of 1975. The complaint states that Ace first attempted to market its novelties where the train stopped in "approximately November of 1975"; this was nearly 6 months after the train's last stop in Massachusetts. Ace did not sue the individual directors of

AFTF in the Washington lawsuit and did not seek to obtain any attachment or injunction in that action.

Following settlement negotiations which were unsuccessful, the suit remained dormant for nearly 5 years, and was dismissed for lack of prosecution by the Washington district court in July 1980. In the interim, in August 1978, AFTF obtained an interlocutory decree of dissolution in the Supreme Judicial Court of Massachusetts, which decree ·was made final in October 1980. AFTF attached to its petition seeking dissolution an affidavit of its general counsel and chief executive officer, which stated that "there are no remaining creditors of the Foundation which I am currently aware of." The receiver alleges that this affidavit was fraudulent, because AFTF's directors knew of the pendency of Ace's antitrust suit when it filed this petition. We note, however, that an audit report attached to the petition showed the 1978 status of the lawsuit and stated that both management and retained counsel were of the opinion that AFTF had a meritorious defense and counterclaim. The report also indicated that most of the corporate assets had been distributed before the filing of the petition rather than as a result of the decree of dissolution.

In December 1981, the United States Court of Appeals for the Ninth Circuit reversed the dismissal of the Washington suit and remanded the case to the district court. *Ace Novelty Co. v. Gooding Amusement Co.*, 664 F.2d 761 (9th Cir. 1981). The district court then held a jury trial, which resulted in a judgment against AFTF of $85,000 (trebled) in August 1982. The judgment was registered in the district of Massachusetts in October 1982, but was returned unsatisfied.

Ace then moved for the appointment of a receiver in the Massachusetts district court in October 1983, for the purpose of recovering the proceeds of the sole remaining corporate asset—a "potential cause of action" against AFTF's former· officers and directors for breach of their fiduciary duties

to AFTF. Following the granting of this motion, the receiver brought the present action and all defendants, nonresidents of Massachusetts, were personally served outside the state as provided in Rule 4(e) of the Federal Rules of Civil Procedure and the Massachusetts "long-arm" statute.

## II. *Discussion*

The sole issue in this appeal is whether the district court had in personam jurisdiction over defendants. The district court held that it did not. It found that its jurisdiction in receivership actions is governed by 28 U.S.C. § 754 and its companion statute governing service of process; 28 U.S.C. § 1692. These statutes vest receivers with jurisdiction over all corporate property, wherever situated, provided that copies of the complaint and order of appointment are filed in the district court for each district in which the property is located within 10 days of the entry of their order of appointment. The district court found that neither party disputed that the sole corporate asset—the "potential cause of action"—resided in Massachusetts and that plaintiff did not file copies of the complaint and appointment order with any other district court. Therefore, the court below held that service of process on the nonresident officers and directors outside of Massachusetts was ineffective under 28 U.S.C. §§ 754 and 1692. Although their positions are based on different grounds, both parties to this appeal have agreed that the district court had no jurisdiction under section 754.

Under the district court's interpretation, section 754 limited the court's extraterritorial jurisdiction more stringently than the Massachusetts long-arm statute or the "minimum contacts" standard. In the alternative, however, the district court found that under those two "more lenient standards," it still would not have personal jurisdiction over the defendants, because plaintiff's cause of action related solely to AFTF's antitrust violations which were not alleged to have taken place in Massachusetts.

## A. *Jurisdiction under Section 754*

The primary statute relied on by the district court, 28 U.S.C. § 754, reads as follows:

§ 754. *Receivers of property in different districts*

A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof.

He shall have capacity to sue in any district without ancillary appointment, and may be sued with respect thereto as provided in section 959 of this title.

Such receiver shall, within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located. The failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district.

Its companion statute, 28 U.S.C. § 1692, provides:

§ 1692. *Process and orders affecting property in different districts*

In proceedings in a district court where a receiver is appointed for property, real, personal, or mixed, situated in different districts, process may issue and be executed in any such district as if the property lay wholly within one district, but orders affecting the property shall be entered of record in each of such districts.

■ Section 754 is ancillary to the main suit in which the receiver is appointed, and the purpose of the statute is to give the appointing court jurisdiction over property in the actual or constructive possession and control of the debtor, wherever such property may be located. *Inland Empire Insurance Co. v. Freed*, 239 F.2d 289, 292 (10th Cir.1956). We are therefore in agreement with the Sixth Circuit's holding that pursuant to sections 754 and 1692, [t]he appointment court's process extends to any judicial district where receivership property is found. As such, the minimum contacts analysis, as a *limitation* on state extra-territorial power, is simply inapposite.

*Haile v. Henderson National Bank*, 657 F.2d 816, 826 (6th Cir.1981) (Emphasis added).

In that case, which is distinguishable on its facts, a receiver appointed in the District of Tennessee, sued Alabama residents and an Alabama bank in the appointing court to recover the debtors' property located in Alabama. The receiver filed a copy of the complaint and the order of appointment in the District of Alabama.

■ We think the district court erred when it concluded, based largely on dicta in the *Haile* case, that jurisdiction in an in personam receivership action, such as the case at bar, is governed exclusively by section 754.

■ It is well established that a federal district court has subject matter jurisdiction in ancillary actions brought in the court where the receiver is appointed "to accomplish the ends sought and directed by the suit in which the appointment was made." *Pope v. Louisville, New Albany & Chicago Ry. Co.*, 173 U.S. 573, 577, 19 S.Ct. 500, 501, 43 L.Ed. 814 (1899); *Tcherepnin v. Franz*, 485 F.2d 1251 (7th Cir.1973). As stated above, the receiver in this case requested and was granted authority by the appointing court to commence an action against the defendants for breach of their fiduciary duties which caused the AFTF to violate the antitrust laws and to incur the adverse judgment in the district court in Washington.

■ We find nothing in the language of section 754 or in the decisional law which precludes the district court from exercising its in personam equitable jurisdiction in ancillary actions brought by the receiver. If there is in personam jurisdiction, it need not be shown that the court

**1074**

has jurisdiction over property under section 754. *Tcherepnin v. Franz*, 439 F.Supp. 1340, 1344, 1345 (N.D.Ill.1977). Instead, the limits of the district court's jurisdiction should comport with the general standards applicable to suits brought under that court's in personam equity jurisdiction, barring any special statutory exceptions. Since we have concluded that the jurisdictional limitations of section 754 are inapplicable in plaintiff's in personam action, we find it necessary to consider the district court's alternative holding and to determine whether the court had jurisdiction over defendants under the Massachusetts long-arm statute and the "minimum contacts" standard of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

### B. *The Long-Arm Statute*

Rule 4(e) of the Federal Rules of Civil Procedure provides that service of process on nonresidents of the forum state may be made pursuant to the statutes or rules of the court of the forum state. The applicable Massachusetts statute (Mass.Gen.Laws Ann. ch. 223A, § 3) provides in pertinent part:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth;
>
> \*   \*   \*   \*   \*   \*
>
> (c) causing tortious injury by an act or omission in this commonwealth \* \* \*.

Plaintiff has not shown that his cause of action "arises from" any business, act, or omission which occurred in Massachusetts. Plaintiff's complaint, which was never amended, states only that the actions of defendants which caused the Washington antitrust judgment constituted a breach of their fiduciary duties to AFTF. None of these actions were alleged in the complaint to have taken place in Massachusetts.

■ Indeed, plaintiff's admission, that the actions which led to the antitrust judgment began to occur several months after the Freedom Train left Massachusetts, indicates that the purported breach of defendants' fiduciary duties did not take place in the forum state. In light of the foregoing, we cannot accept plaintiff's totally unsupported assertion, made for the first time on appeal, that the antitrust violations complained of took place in Massachusetts. *See Johnson v. Allyn & Bacon, Inc.*, 731 F.2d 64, 73 (1st Cir.1984), and cases cited therein.

Plaintiff's principal argument with respect to the Massachusetts long-arm statute is that the defendants fraudulently induced the Supreme Judicial Court of Massachusetts to dissolve AFTF, in violation of a Massachusetts statute (Mass.Gen.Laws Ann. ch. 156B § 68). Even under the most strained interpretation of the pleadings, however, we cannot read plaintiff's complaint to encompass a suit against defendants for this purported fraudulent conduct. Consequently, we reject plaintiff's argument that the instant claim is a "continuing claim" stemming from the dissolution of AFTF in Massachusetts.

It is therefore apparent from plaintiff's submissions that the only conduct taking place in Massachusetts even remotely related to the antitrust violations in question was defendants' acceptance of positions as officers and directors of a Massachusetts corporation. Such conduct, in and of itself, falls far short of that necessary to give rise to plaintiff's cause of action. *Shaffer v. Heitner*, 433 U.S. 186, 215–16, 97 S.Ct. 2569, 2585–2586, 53 L.Ed.2d 683 (1977). In this connection, it is significant that Massachusetts, unlike some states, has not enacted a statute that treats acceptance of a directorship as consent to jurisdiction in the state of incorporation. *See, e.g.,* Connecticut General Stat.Rev. § 33–322 (1976); 10 Delaware Code Ann. § 3114 (1977) (enacted subsequent to *Shaffer v. Heitner*). Hence, we hold that plaintiff has not established the requisite nexus to its claim to

permit the district court to assert jurisdiction under the Massachusetts long-arm statute.

## C. *Minimum Contacts*

In *Hahn v. Vermont Law School,* 698 F.2d 48, 50 (1st Cir.1983), this court, with reference to the Massachusetts long-arm statute, declared:

> We have previously noted that Massachusetts courts have construed this statutory language to impose a set of constraints on the assertion of in personam jurisdiction in addition to the constraints imposed by the Constitution. [citation omitted] The inquiry into jurisdiction is thus twofold and a court may assert jurisdiction only when both of the following questions are answered affirmatively: "(1) is the assertion of jurisdiction authorized by the statute, and (2) if authorized, is the exercise of jurisdiction under State law consistent with basic due process requirements mandated by the United States Constitution?" *Good Hope Industries, Inc. v. Ryder Scott Co.,* 378 Mass. 1, 389 N.E.2d 76–79 (1979).

It therefore follows that we need not determine whether the exercise of jurisdiction is consistent with due process requirements under the "minimum contacts" test, since we have found that jurisdiction is lacking under the long-arm statute.

■ As an alternative ground for our decision, however, we also find that the district court constitutionally lacked jurisdiction over defendants under the minimum contacts test of *International Shoe, supra.*

■ The well known formulation of the *International Shoe* case requires that in order for due process requirements to be satisfied, the nonresident defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." 326 U.S. at 316, 66 S.Ct. at 158. Such minimum contacts may be deemed to exist when the controversy arises out of the defendant's activities within the forum state, if his conduct is "such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). In circumstances such as those prevailing here, where we have found that plaintiff's claim did not arise from defendants' activities in Massachusetts, due process is satisfied by the assertion of jurisdiction only if the defendants' contacts with the forum state were of a "continuous and systematic nature." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* — U.S. —, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984); *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 438, 445, 72 S.Ct. 413, 414, 418, 96 L.Ed. 485 (1952). If such conditions pertain, the court would be said to be exercising "general jurisdiction" over the defendant. *See Helicopteros Nacionales,* 104 S.Ct. at 1872 n. 9, and authorities cited therein.

In the instant case, the record does not reveal that the nexus between defendants and Massachusetts was sufficiently continuous and systematic to justify the exercise of the court's general jurisdiction. To the contrary, the only contacts shown between the defendants and Massachusetts were their acceptance of positions as officers and directors of a Massachusetts corporation and their participation in the dissolution of the corporation. To the extent that they did business for the corporation, the record shows that such business was conducted in Washington, D.C. or Bailey's Crossroads, Virginia, where the foundation's offices were apparently located.

■ It is incumbent upon plaintiff to prove the facts necessary to sustain jurisdiction. *Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902, 904 (1st Cir. 1980). The district court's finding that plaintiff had not sustained its burden to establish the requisite minimum contacts is not clearly erroneous. As stated above, the Supreme Court in *Shaffer v. Heitner* held that the mere acceptance of positions as officers and directors of a corporation is

not sufficient to constitute minimum contacts. 433 U.S. at 216, 97 S.Ct. at 2586. We think that considerations of "fair play and substantial justice" would be offended if the court's in personam jurisdiction in this case were based on the defendants' holding of those offices, plus the one additional contact with the forum—defendants' participation in the dissolution of AFTF. The total of defendants' contacts with the forum state appears less significant than those that were involved in *Helicopteros Nacionales*. In that case, a Colombian helicopter leasing corporation was sued in Texas as a result of a helicopter crash in Peru in which four Americans were killed. The corporation purchased 80 percent of its helicopter fleet from a Texas manufacturer over the course of many years; sent pilots and managers to be trained there, and also negotiated a contract for the leasing of the helicopters in Texas. The Supreme Court held that defendant's contacts with the forum state were insufficient to satisfy the Due Process Clause of the Fourteenth Amendment and hence to allow the state court to assert in personam jurisdiction over the defendant. This teaching is obviously applicable to the instant case.

AFFIRMED.