**DYNAMIC CONCEPTS, INC.**

v.

**MODERN CHAIN MFG. CO., INC.**

Civ. A. No. 84–0688 P.

United States District Court,
D. Rhode Island.

June 13, 1985.

Vincent T. Cannon, Providence, R.I., for plaintiff.

Milton Stanzler, Providence, R.I., for defendant.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

This is a diversity action, in which plaintiff Dynamic Concepts, Inc., a Rhode Island corporation, alleges that Modern Chain Manufacturing Co., Inc., a New York corporation, has breached a contract between the two parties. Currently before the Court is defendant's motion to dismiss for lack of *in personam* jurisdiction. A hearing was held on this motion on May 13, 1985.

## FACTUAL BACKGROUND

■ The materials filed by the parties in connection with this jurisdictional question establish the following undisputed facts.[1] Sometime in the Spring of 1984, plaintiff's president, Gerald Shaulson, met with defendant's president, Ady Edelstein, in Providence, Rhode Island. The parties met to discuss the possibility of plaintiff's representing the defendant's line of gold jewelry chain products to the catalogue showroom industry. After the first meeting in Providence, further discussions were conducted by telephone, as well as at additional meetings in New York. On June 28, 1984, in New York, the parties executed a written agreement.

The agreement provides that plaintiff is to become defendant's exclusive representative to the catalogue showroom industry. The contract states that plaintiff shall also sell to other selected, non-catalogue accounts, but it specifies that plaintiff will be defendant's *exclusive* representative to only the catalogue showroom segment of the jewelry industry. For its services, plaintiff is to be paid on a commission basis, in an amount per order set forth in a schedule appended to the agreement. The agreement also provides that plaintiff will receive a nonrefundable monthly draw against its commission earnings, in an amount also set forth in the agreement. A check representing this draw was to be sent each month by defendant to plaintiff at its Rhode Island address.

---

**1.** These materials include the affidavits of the president of each party-corporation; a copy of the contract; and defendant's answers to plaintiff's interrogatories. In evaluating these materials, the Court is mindful that plaintiff bears the burden of presenting facts necessary to support the assertion of this Court's jurisdiction. *See American Freedom Train Found. v. Spurney,* 747 F.2d 1069, 1075 (1st Cir.1984) (citing *Escude Cruz v. Ortho Pharmaceutical Corp.* 619 F.2d 902, 904 (1st Cir.1980)). In reciting and assessing these facts for the purposes of this jurisdictional inquiry, the Court, of course, intimates no view as to the merits of the contractual dispute.

In return for being designated defendant's exclusive representative to the catalogue showroom trade, the agreement states that plaintiff will neither represent, nor sell, the gold chain products of any manufacturer other than defendant. The agreement further obligates plaintiff to participate in certain designated exhibiting and promotional activities as part of its efforts to obtain orders for defendant.

In this action, plaintiff alleges that defendant has breached the contract by making only one of the several monthly draw payments to which plaintiff claims it is now entitled. Because it is defendant's jurisdictional challenge, and not the merits of the contract dispute, that is now before the Court, the central question here is the degree of the defendant's affiliation with the state of Rhode Island. In addition to the contract with plaintiff, defendant has other, unrelated links to the state. As its response to plaintiff's interrogatories demonstrate, these separate links are essentially fourfold. First, defendant has a contract to sell gold products to two corporations in this state—Adorno of Warwick, Rhode Island and P & B, also of Warwick, Rhode Island. Between September, 1983 and January 1985, defendant has shipped merchandise to these two corporations on twenty-two occasions, and has received $88,000 in gross profits from these sales. Second, defendant maintains a checking account at The Fleet National Bank in Providence. Third, defendant's president and one of its employees have attended jewelry shows in the state. Fourth, defendant has purchased gold from the Fleet National Bank in Providence and has purchased gold jewelry machinery from a Rhode Island corporation.

## DISCUSSION

▮ Rhode Island law governs the question whether defendant is properly subject to the jurisdiction of this Court. *Hahn v. Vermont Law School,* 698 F.2d 48, 49 (1st Cir.1983) (citations omitted). Because the Rhode Island longarm statute permits jurisdiction to the fullest extent permitted by the federal constitution, R.I.

G.L. § 9–5–33; *see Roger Williams General Hospital v. Fall River Trust Co.,* 423 A.2d 1384 (R.I.1981), the inquiry turns on whether the defendant has minimum contacts with the state sufficient to ensure that compelling it to defend a lawsuit here does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). A defendant's contacts may be deemed sufficient where there has been some act by which it has "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws," *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), and it is therefore reasonable for the defendant to have anticipated being haled into court in that state, *Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

In applying these familiar standards, a court must also determine:

whether the cause of action arises out of or is related to the defendant's contacts with the forum state. If so, then "specific jurisdiction" may be found based on the relationship among the defendant, the forum, and the litigation. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* —— U.S. ——, —— & n. 8, 104 S.Ct. 1868, 1872 & n. 8, 80 L.Ed.2d 404 (1984), *citing Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). If, on the other hand, the cause of action is unrelated to the defendant's in-state activities, the issue becomes one of "general" rather than "specific" jurisdiction. *Helicopteros,* —— U.S. —— n. 9, 104 S.Ct. at 1872 n. 9. Although minimum contacts suffice in and of themselves for specific jurisdiction under *International Shoe* [*v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ] the standard for general jurisdiction is considerably more stringent. *See Keeton* [*v. Hustler Magazine* (1984) ] 465 U.S. 770 at ——, 104 S.Ct. [1473] at 1480

[79 L.Ed.2d 790]; *Seymour v. Parke, Davis & Co.*, 423 F.2d 584, 587 (1st Cir.1970). *Glater v. Eli Lilly & Co.*, 744 F.2d 213, 215–216 (1st Cir.1984) (footnote omitted).

Here, the plaintiff's contract action arises out of some, but not all of its contacts with Rhode Island. Looking first to the contract-related contacts, I will initially examine the question of "specific jurisdiction."

The Supreme Court has just recently decided a case that directly addresses the question of when specific jurisdiction may be asserted over a nonresident defendant based on contractual dealings with a forum state plaintiff. In *Burger King v. Rudzewicz*, ⸺ U.S. ⸺, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the Court held that Michigan residents who operated a Burger King franchise in their home state could be compelled to defend litigation (arising out of their franchise agreement with Burger King) in Florida, the home state of the franchisor Burger King Corporation. In so holding, the Court made clear that the fact of entering into a contract with a resident of the forum state could not *alone* subject a nonresident to jurisdiction, but that:

> a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction' ... It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealings—that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum.

> *Burger King*, ⸺ U.S. at ⸺, 105 S.Ct. at 2185 (quoting *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316–317, 63 S.Ct. 602, 604–605, 87 L.Ed. 777 (1943)).

Assessing these factors in the *Burger King* case, the Court found jurisdiction based on several aspects of the franchises' relationship to Burger King's Florida headquarters: the fact that the franchisees "entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida," and derived "the manifold benefits" of "affiliation with a nationwide organization," *id.* at 2186; the fact that the franchises carried on a continuous course of direct communications by mail and by telephone with the Florida headquarters and were required to make regular payments there, *id.* at 2187; and the fact that the franchise agreement expressly provided that Florida law was to govern disputes between the parties, *id.* at 2189.

■ Applying the *Burger King* principles to the facts of the case now before me, I find that jurisdiction is proper based on the contract between the parties. As in *Burger King*, the defendant here has entered into a "structured relationship," *id.* at 2186, with a forum state plaintiff, under which defendant is obligated to remit regular commission payments to Rhode Island. The parties' contractual relationship likewise contemplated a consistent course of communications, as to the progress of sales and orders. Further, just as the franchisees in *Burger King* derived commercial benefits from deliberately reaching out to Florida and affiliating themselves with the Burger King Corporation, here the defendants have reached out to Rhode Island to avail themselves of the services of a Rhode Island exclusive sales representative, and to reap the commercial benefits of that Rhode Island party's efforts. Indeed, I believe the contractual arrangement involved here, in which the plaintiff, as exclusive representative to a portion of the jewelry trade, is obligated to undertake a panoply of activity on defendant's behalf and to forego representation of all other gold chain manufacturers, weighs even more heavily in favor of jurisdiction than did the franchise arrangement in *Burger King.* For here, by engaging plaintiff to act for it, in the nature of agent,[2] defendant has manifestly chosen to avail itself of the privilege of conducting activities, *through and in concert with plaintiff,* in this state, *see*

---

2. I need not and do not decide whether a formal agency relationship was created here.

*Samson Cordage Works v. Wellington Puritan Mills*, 303 F.Supp. 155, 158–160 (D.R. I.1969); *P.P.S., Inc. v. Jewelry Sales Representative, Inc.*, 392 F.Supp. 375 (S.D.N.Y.1975), and of the benefits and protections of Rhode Island law.[3] Because the creation of such a commercial relationship thereby evidences a " 'substantial connection,' " *Burger King, supra,* 105 S.Ct. 2184, n. 18 (quoting *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)), between defendant and the state of Rhode Island, I do not deem fatal the fact that the parties' contract did not expressly specify, as did the agreements in *Burger King,* that the forum state's law would apply.[4] And while defendant makes much of the fact that the contract here did not call for it to physically travel to Rhode Island, the *Burger King* Court made plain that the mere lack of physical contacts cannot be determinative of whether jurisdiction may be exercised:

> Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business in conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

105 S.Ct. at 2184 (citations omitted).

Because I believe that defendant plainly directed its activities purposefully toward Rhode Island, and find no other "compelling" factors, *id.* at 2188, n. 25, militating against jurisdiction, I hold that specific jurisdiction lies in this case.

Even in the absence of specific jurisdiction, however, it is apparent that this Court may properly exercise general jurisdiction over the defendant. Wholly apart from the contacts created by the contract at issue here, defendant has significantly affiliated itself with this state. It makes regular shipments of merchandise to two corporations here and has, in the past two years, derived considerable revenue—$88,000—from these sales. This fact alone evidences a continuous and deliberate exploitation of the Rhode Island market, *see Keeton v. Hustler Magazine,* 465 U.S. 770, ——, 104 S.Ct. 1473, 1481, 79 L.Ed.2d 790 (1984), and is itself probably sufficient to confer general jurisdiction. Together with the fact that defendant also maintains a checking account in a Rhode Island bank, and purchases gold and equipment here, I find that the record amply supports the conclusion that defendant is engaged in the "continuous and systematic pursuit of general business activities in the forum state." *Glater, supra,* 744 F.2d at 216 (citing *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952)). I therefore find a sufficient basis to sustain this Court's general jurisdiction over the defendant.

For the foregoing reasons, defendant's motion to dismiss is denied.

---

**3.** Certainly, defendant could have looked to the Rhode Island courts to enforce its contract with the plaintiff if it believed plaintiff has failed to meet any of its contractual obligations. As the First Circuit has said in upholding jurisdiction over a nonresident based on its contract with a former state resident, "[t]he primary benefit that any nonresident corporation seeks from the law of a foreign state is enforcement of the contracts it has made with that state's residents." *Vencedor Mfg. Co., Inc. v. Gougler Industries,* 557 F.2d 886, 892 (1st Cir.1977).

**4.** Nor did the contract provide that New York law would govern disputes between the parties.