# KEETON *v.* HUSTLER MAGAZINE, INC., ET AL.

No. 82–485.  Argued November 8, 1983—Decided March 20, 1984

REHNQUIST, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, MARSHALL, BLACKMUN, POWELL, STEVENS, and O'CONNOR, JJ., joined.   BRENNAN, J., filed an opinion concurring in the judgment, *post*, p. 782.

*Norman Roy Grutman* argued the cause for petitioner. With him on the briefs was *Jeffrey H. Daichman.*

*Stephen M. Shapiro*, by invitation of the Court, 464 U. S. 958, argued the cause as *amicus curiae* in support of the judgment below.   *Lea Brilmayer, David Kahn*, and *Henry Monaghan* filed a brief for respondents.*

---

*Briefs of *amici curiae* urging affirmance were filed for the Motor Vehicle Manufacturers Association by *Robert L. Stern, Stephen M. Shapiro,*

JUSTICE REHNQUIST delivered the opinion of the Court.

Petitioner Kathy Keeton sued respondent Hustler Magazine, Inc., and other defendants in the United States District Court for the District of New Hampshire, alleging jurisdiction over her libel complaint by reason of diversity of citizenship. The District Court dismissed her suit because it believed that the Due Process Clause of the Fourteenth Amendment to the United States Constitution forbade the application of New Hampshire's long-arm statute in order to acquire personal jurisdiction over respondent. The Court of Appeals for the First Circuit affirmed, 682 F. 2d 33 (1982), summarizing its concerns with the statement that "the New Hampshire tail is too small to wag so large an out-of-state dog." *Id.*, at 36. We granted certiorari, 459 U. S. 1169 (1983), and we now reverse.

Petitioner Keeton is a resident of New York. Her only connection with New Hampshire is the circulation there of copies of a magazine that she assists in producing. The magazine bears petitioner's name in several places crediting her with editorial and other work. Respondent Hustler Magazine, Inc., is an Ohio corporation, with its principal place of business in California. Respondent's contacts with New Hampshire consist of the sale of some 10,000 to 15,000 copies of Hustler Magazine in that State each month. See App. 81a–86a. Petitioner claims to have been libeled in five separate issues of respondent's magazine published between September 1975 and May 1976.[1]

---

*William H. Crabtree,* and *Edward P. Good;* for the Association of American Publishers, Inc., by *R. Bruce Rich;* and for CBS Inc. et al. by *Robert D. Sack, Douglas P. Jacobs, Harvey L. Lipton, Peter C. Gould, Bruce W. Sanford,* and *Lawrence Gunnels.*

[1] Initially, petitioner brought suit for libel and invasion of privacy in Ohio, where the magazine was published. Her libel claim, however, was dismissed as barred by the Ohio statute of limitations, and her invasion-of-privacy claim was dismissed as barred by the New York statute of limita-

The Court of Appeals, in its opinion affirming the District Court's dismissal of petitioner's complaint, held that petitioner's lack of contacts with New Hampshire rendered the State's interest in redressing the tort of libel to petitioner too attenuated for an assertion of personal jurisdiction over respondent. The Court of Appeals observed that the "single publication rule" ordinarily applicable in multistate libel cases would require it to award petitioner "damages caused in *all* states" should she prevail in her suit, even though the bulk of petitioner's alleged injuries had been sustained outside New Hampshire. 682 F. 2d, at 35.[2] The court also stressed New Hampshire's unusually long (6-year) limitations period for libel actions. New Hampshire was the only State where petitioner's suit would not have been time-barred when it was filed. Under these circumstances, the Court of Appeals concluded that it would be "unfair" to assert jurisdiction over respondent. New Hampshire has a minimal interest in applying its unusual statute of limitations to, and awarding damages for, injuries to a nonresident occurring outside the State, particularly since petitioner suffered such a small proportion of her total claimed injury within the State. *Id.*, at 35–36.

We conclude that the Court of Appeals erred when it affirmed the dismissal of petitioner's suit for lack of personal jurisdiction. Respondent's regular circulation of magazines in the forum State is sufficient to support an assertion of ju-

---

tions, which the Ohio court considered to be "migratory." Petitioner then filed the present action in October 1980.

[2] The "single publication rule" has been summarized as follows:

"As to any single publication, (a) only one action for damages can be maintained; (b) all damages suffered in all jurisdictions can be recovered in the one action; and (c) a judgment for or against the plaintiff upon the merits of any action for damages bars any other action for damages between the same parties in all jurisdictions." Restatement (Second) of Torts § 577A(4) (1977).

risdiction in a libel action based on the contents of the magazine. This is so even if New Hampshire courts, and thus the District Court under *Klaxon Co. v. Stentor Co.*, 313 U. S. 487 (1941), would apply the so-called "single publication rule" to enable petitioner to recover in the New Hampshire action her damages from "publications" of the alleged libel throughout the United States.[3]

The District Court found that "[t]he general course of conduct in circulating magazines throughout the state was purposefully directed at New Hampshire, and inevitably affected persons in the state." App. to Pet. for Cert. 5a. Such regular monthly sales of thousands of magazines cannot by any stretch of the imagination be characterized as random, isolated, or fortuitous. It is, therefore, unquestionable that New Hampshire jurisdiction over a complaint based on those contacts would ordinarily satisfy the requirement of the Due Process Clause that a State's assertion of personal jurisdiction over a nonresident defendant be predicated on "minimum contacts" between the defendant and the State. See *World-Wide Volkswagen Corp. v. Woodson*, 444 U. S. 286, 297–298 (1980); *International Shoe Co. v. Washington*, 326 U. S. 310, 317 (1945). And, as the Court of Appeals acknowledged, New Hampshire has adopted a "long-arm" statute authorizing service of process on nonresident corporations whenever permitted by the Due Process Clause. 682 F. 2d, at 33.[4] Thus, all the requisites for personal juris-

---

[3] "It is the general rule that each communication of the same defamatory matter by the same defamer, whether to a new person or to the same person, is a separate and distinct publication, for which a separate cause of action arises." *Id.*, § 577A, Comment *a.* The "single publication rule" is an exception to this general rule.

[4] New Hampshire Rev. Stat. Ann. § 300:14 (1977) provides in relevant part:

"If a foreign corporation . . . commits a tort in whole or in part in New Hampshire, such ac[t] shall be deemed to be doing business in New Hampshire by such foreign corporation and shall be deemed equivalent to the ap-

diction over Hustler Magazine, Inc., in New Hampshire are present.

We think that the three concerns advanced by the Court of Appeals, whether considered singly or together, are not sufficiently weighty to merit a different result. The "single publication rule," New Hampshire's unusually long statute of limitations, and plaintiff's lack of contacts with the forum State do not defeat jurisdiction otherwise proper under both New Hampshire law and the Due Process Clause.

In judging minimum contacts, a court properly focuses on "the relationship among the defendant, the forum, and the litigation." *Shaffer* v. *Heitner*, 433 U. S. 186, 204 (1977). See also *Rush* v. *Savchuk*, 444 U. S. 320, 332 (1980). Thus, it is certainly relevant to the jurisdictional inquiry that petitioner is *seeking* to recover damages suffered in all States in this one suit. The contacts between respondent and the forum must be judged in the light of that claim, rather than a claim only for damages sustained in New Hampshire. That is, the contacts between respondent and New Hampshire must be such that it is "fair" to compel respondent to defend a multistate lawsuit in New Hampshire seeking nationwide damages for all copies of the five issues in question, even though only a small portion of those copies were distributed in New Hampshire.

The Court of Appeals expressed the view that New Hampshire's "interest" in asserting jurisdiction over plaintiff's multistate claim was minimal. We agree that the "fairness" of

pointment by such foreign corporation of the secretary of the state of New Hampshire and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against such foreign corporation arising from or growing out of such . . . tort."

This statute has been construed in the New Hampshire courts to extend jurisdiction over nonresident corporations to the fullest extent permitted under the Federal Constitution. See, *e. g.*, *Roy* v. *North American Newspaper Alliance, Inc.*, 106 N. H. 92, 95, 205 A. 2d 844, 846 (1964).

haling respondent into a New Hampshire court depends to some extent on whether respondent's activities relating to New Hampshire are such as to give that State a legitimate interest in holding respondent answerable on a claim related to those activities. See *World-Wide Volkswagen Corp.* v. *Woodson, supra,* at 292; *McGee* v. *International Life Ins. Co.,* 355 U. S. 220, 223 (1957). But insofar as the State's "interest" in adjudicating the dispute is a part of the Fourteenth Amendment due process equation, as a surrogate for some of the factors already mentioned, see *Insurance Corp. of Ireland* v. *Compagnie des Bauxites de Guinee,* 456 U. S. 694, 702–703, n. 10 (1982), we think the interest is sufficient.

The Court of Appeals acknowledged that petitioner was suing, at least in part, for damages suffered in New Hampshire. 682 F. 2d, at 34. And it is beyond dispute that New Hampshire has a significant interest in redressing injuries that actually occur within the State.

> "'A state has an especial interest in exercising judicial jurisdiction over those who commit torts within its territory. This is because torts involve wrongful conduct which a state seeks to deter, and against which it attempts to afford protection, by providing that a tortfeasor shall be liable for damages which are the proximate result of his tort.'" *Leeper* v. *Leeper,* 114 N. H. 294, 298, 319 A. 2d 626, 629 (1974) (quoting Restatement (Second) of Conflict of Laws § 36, Comment *c* (1971)).

This interest extends to libel actions brought by nonresidents. False statements of fact harm both the subject of the falsehood *and* the readers of the statement. New Hampshire may rightly employ its libel laws to discourage the deception of its citizens. There is "no constitutional value in false statements of fact." *Gertz* v. *Robert Welch, Inc.,* 418 U. S. 323, 340 (1974).

New Hampshire may also extend its concern to the injury that in-state libel causes within New Hampshire to a nonres-

ident. The tort of libel is generally held to occur wherever the offending material is circulated. Restatement (Second) of Torts § 577A, Comment *a* (1977). The reputation of the libel victim may suffer harm even in a State in which he has hitherto been anonymous.[5] The communication of the libel may create a negative reputation among the residents of a jurisdiction where the plaintiff's previous reputation was, however small, at least unblemished.

New Hampshire has clearly expressed its interest in protecting such persons from libel, as well as in safeguarding its populace from falsehoods. Its criminal defamation statute bears no restriction to libels of which residents are the victim.[6] Moreover, in 1971 New Hampshire specifically deleted from its long-arm statute the requirement that a tort be committed "against a resident of New Hampshire."[7]

New Hampshire also has a substantial interest in cooperating with other States, through the "single publication rule," to provide a forum for efficiently litigating all issues and damages claims arising out of a libel in a unitary proceeding.[8] This rule reduces the potential serious drain of libel cases on judicial resources. It also serves to protect defendants from harassment resulting from multiple suits. Restatement (Second) of Torts § 577A, Comment *f* (1977). In sum, the combination of New Hampshire's interest in redressing injuries that occur within the State and its interest in cooper-

---

[5] We do not, therefore, rely for our holding on the fact that petitioner's name appears in fine print in several places in a magazine circulating in New Hampshire.

[6] New Hampshire Rev. Stat. Ann. § 644:11(I) (1974) makes it a misdemeanor for anyone to "purposely communicat[e] to *any person*, orally or in writing, any information which he knows to be false and knows will tend to expose any other living person to public hatred, contempt or ridicule." (Emphasis added.)

[7] See N. H. Rev. Stat. Ann. § 300:14 (1977), History.

[8] The great majority of the States now follow the "single publication rule." Restatement (Second) of Torts § 577A, Appendix, Reporter's Note (1977).

ating with other States in the application of the "single publication rule" demonstrates the propriety of requiring respondent to answer to a multistate libel action in New Hampshire.[9]

The Court of Appeals also thought that there was an element of due process "unfairness" arising from the fact that the statutes of limitations in every jurisdiction except New Hampshire had run on the plaintiff's claim in this case.[10] Strictly speaking, however, any potential unfairness in applying New Hampshire's statute of limitations to all aspects of this nationwide suit has nothing to do with the jurisdiction of the court to adjudicate the claims. "The issue is personal jurisdiction, not choice of law." *Hanson* v. *Denckla,* 357 U. S. 235, 254 (1958). The question of the applicability of New Hampshire's statute of limitations to claims for out-of-state damages presents itself in the course of litigation only after jurisdiction over respondent is established, and we do not think that such choice-of-law concerns should complicate or distort the jurisdictional inquiry.

---

[9] Of course, to conclude that petitioner may properly *seek* multistate damages in this New Hampshire suit is not to conclude that such damages should, in fact, be awarded if petitioner makes out her case for libel. The actual applicability of the "single publication rule" in the peculiar circumstances of this case is a matter of substantive law, not personal jurisdiction. We conclude only that the District Court has jurisdiction to *entertain* petitioner's multistate libel suit.

[10] Under traditional choice-of-law principles, the law of the forum State governs on matters of procedure. See Restatement (Second) of Conflict of Laws § 122 (1971). In New Hampshire, statutes of limitations are considered procedural. *Gordon* v. *Gordon,* 118 N. H. 356, 360, 387 A. 2d 339, 342 (1978); *Barrett* v. *Boston & Maine R. Co.,* 104 N. H. 70, 178 A. 2d 291 (1962). There has been considerable academic criticism of the rule that permits a forum State to apply its own statute of limitations regardless of the significance of contacts between the forum State and the litigation. See, *e. g.,* R. Weintraub, Commentary on the Conflict of Laws § 9.2B, p. 517 (2d ed. 1980); Martin, Constitutional Limitations on Choice of Law, 61 Cornell L. Rev. 185, 221 (1976); Comment, The Statute of Limitations and the Conflict of Laws, 28 Yale L. J. 492, 496–497 (1919). But we find it unnecessary to express an opinion at this time as to whether any arguable unfairness rises to the level of a due process violation.

The chance duration of statutes of limitations in nonforum jurisdictions has nothing to do with the contacts among respondent, New Hampshire, and this multistate libel action. Whether Ohio's limitations period is six months or six years does not alter the jurisdictional calculus in New Hampshire. Petitioner's successful search for a State with a lengthy statute of limitations is no different from the litigation strategy of countless plaintiffs who seek a forum with favorable substantive or procedural rules or sympathetic local populations. Certainly Hustler Magazine, Inc., which chose to enter the New Hampshire market, can be charged with knowledge of its laws and no doubt would have claimed the benefit of them if it had a complaint against a subscriber, distributor, or other commercial partner.

Finally, implicit in the Court of Appeals' analysis of New Hampshire's interest is an emphasis on the extremely limited contacts of the *plaintiff* with New Hampshire. But we have not to date required a plaintiff to have "minimum contacts" with the forum State before permitting that State to assert personal jurisdiction over a nonresident defendant. On the contrary, we have upheld the assertion of jurisdiction where such contacts were entirely lacking. In *Perkins* v. *Benguet Mining Co.*, 342 U. S. 437 (1952), none of the parties was a resident of the forum State; indeed, neither the plaintiff nor the subject matter of his action had any relation to that State. Jurisdiction was based solely on the fact that the defendant corporation had been carrying on in the forum "a continuous and systematic, but limited, part of its general business." *Id.*, at 438. In the instant case, respondent's activities in the forum may not be so substantial as to support jurisdiction over a cause of action unrelated to those activities.[11] But

---

[11] The defendant corporation's contacts with the forum State in *Perkins* were more substantial than those of respondent with New Hampshire in this case. In *Perkins*, the corporation's mining operations, located in the Philippine Islands, were completely halted during the Japanese occupation. The president, who was also general manager and principal stockholder of the company, returned to his home in Ohio where he carried on "a continu-

respondent is carrying on a "part of its general business" in New Hampshire, and that is sufficient to support jurisdiction when the cause of action arises out of the very activity being conducted, in part, in New Hampshire.

The plaintiff's residence is not, of course, completely irrelevant to the jurisdictional inquiry. As noted, that inquiry focuses on the relations among the defendant, the forum, and the litigation. Plaintiff's residence may well play an important role in determining the propriety of entertaining a suit against the defendant in the forum. That is, plaintiff's residence in the forum may, because of defendant's relationship with the plaintiff, enhance defendant's contacts with the forum. Plaintiff's residence may be the focus of the activities of the defendant out of which the suit arises. See *Calder* v. *Jones, post,* at 788–789; *McGee* v. *International Life Ins. Co.,* 355 U. S. 220 (1957). But plaintiff's residence in the forum State is not a separate requirement, and lack of residence will not defeat jurisdiction established on the basis of defendant's contacts.

It is undoubtedly true that the bulk of the harm done to petitioner occurred outside New Hampshire. But that will be true in almost every libel action brought somewhere other than the plaintiff's domicile. There is no justification for restricting libel actions to the plaintiff's home forum.[12] The victim of a libel, like the victim of any other tort, may choose to bring suit in any forum with which the defendant has "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and sub-

---

ous and systematic supervision of the necessarily limited wartime activities of the company." 342 U. S., at 448. The company's files were kept in Ohio, several directors' meetings were held there, substantial accounts were maintained in Ohio banks, and all key business decisions were made in the State. *Ibid.* In those circumstances, Ohio was the corporation's principal, if temporary, place of business so that Ohio jurisdiction was proper even over a cause of action unrelated to the activities in the State.

[12] As noted in *Calder* v. *Jones, post,* at 790–791, we reject categorically the suggestion that invisible radiations from the First Amendment may defeat jurisdiction otherwise proper under the Due Process Clause.

stantial justice.' *Milliken* v. *Meyer*, 311 U. S. 457, 463 [(1940)]." *International Shoe Co.* v. *Washington*, 326 U. S., at 316.

Where, as in this case, respondent Hustler Magazine, Inc., has continuously and deliberately exploited the New Hampshire market, it must reasonably anticipate being haled into court there in a libel action based on the contents of its magazine. *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U. S., at 297–298. And, since respondent can be charged with knowledge of the "single publication rule," it must anticipate that such a suit will seek nationwide damages. Respondent produces a national publication aimed at a nationwide audience. There is no unfairness in calling it to answer for the contents of that publication wherever a substantial number of copies are regularly sold and distributed.

The judgment of the Court of Appeals is reversed,[13] and the cause is remanded for proceedings consistent with this opinion.

*It is so ordered.*

---

[13] In addition to Hustler Magazine, Inc., Larry Flynt, the publisher, editor, and owner of the magazine, and L. F. P., Inc., Hustler's holding company, were named as defendants in the District Court. It does not of course follow from the fact that jurisdiction may be asserted over Hustler Magazine, Inc., that jurisdiction may also be asserted over either of the other defendants. In *Calder* v. *Jones, post*, at 790, we today reject the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity. But jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him; nor does jurisdiction over a parent corporation automatically establish jurisdiction over a wholly owned subsidiary. *Consolidated Textile Co.* v. *Gregory*, 289 U. S. 85, 88 (1933); *Peterson* v. *Chicago, R. I. & P. R. Co.*, 205 U. S. 364, 391 (1907). Each defendant's contacts with the forum State must be assessed individually. See *Rush* v. *Savchuk*, 444 U. S. 320, 332 (1980) ("The requirements of *International Shoe . . .* must be met as to each defendant over whom a state court exercises jurisdiction"). Because the Court of Appeals concluded that jurisdiction could not be had even against Hustler Magazine, Inc., it did not inquire into the propriety of jurisdiction over the other defendants. Such inquiry is, of course, open upon remand.

JUSTICE BRENNAN, concurring in the judgment.

I agree with the Court that "[r]espondent's regular circulation of magazines in the forum State is sufficient to support an assertion of jurisdiction in a libel action based on the contents of the magazine." *Ante*, at 773–774. These contacts between the respondent and the forum State are sufficiently important and sufficiently related to the underlying cause of action to foreclose any concern that the constitutional limits of the Due Process Clause are being violated. This is so, moreover, irrespective of the State's interest in enforcing its substantive libel laws or its unique statute of limitations. Indeed, as we recently explained in *Insurance Corp. of Ireland* v. *Compagnie des Bauxites de Guinee*, 456 U. S. 694 (1982), these interests of the State should be relevant only to the extent that they bear upon the liberty interests of the respondent that are protected by the Fourteenth Amendment. "The restriction on state sovereign power described in *World-Wide Volkswagen Corp.* [v. *Woodson*, 444 U. S. 286, 291–292 (1980)] must be seen as ultimately a function of the individual liberty interest preserved by the Due Process Clause. That Clause is the only source of the personal jurisdiction requirement and the Clause itself makes no mention of federalism concerns." *Id.*, at 702–703, n. 10.