Stephen SNUFFER, d/b/a Snuffers Insurance Agency, Plaintiff,

v.

MOTORISTS MUTUAL INSURANCE COMPANY, Defendant.

Civ. A. No. 83–5189.

United States District Court,
S.D. West Virginia,
Beckley Division.

June 10, 1986.

---

Kevin B. Burgess, Hamilton & Mooney, Oak Hill, W.Va., for plaintiff.

Edward W. Eardley and Christopher Bastien, Steptoe & Johnson, Charleston, W.Va., for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

At the pretrial conference held in this action, counsel for the parties discussed with the Court the various theories and issues involved in this litigation. Consistent with the remarks made at the conference, and to clarify the issues to be tried, the Court makes the following determination with respect to the theories, or alleged theories,* advanced by the Plaintiff.

---

* The Defendant has presented argument on plausible theories which the Plaintiff may or may not be serious in pursuing.

1. *Slander:* The Plaintiff claims that an agent of the Defendant slandered the Plaintiff by telling a representative of another insurance that the Plaintiff was the object of a large "errors and omissions" claim. As to this issue, the Defendant argues that the substantive law of Ohio controls since the conversation took place exclusively within Ohio. The Court agrees. The Plaintiff's reliance on *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) is misplaced. The *Keeton* case dealt with the national publication of an allegedly libelous article. The plaintiff brought suit in a state where only a few of the magazines were distributed. The Supreme Court held that the law of that state, New Hampshire, would apply to the action. The *Keeton* case, however, involved a publication within the forum state. The case at bar does not. Therefore, it is distinguishable.

That the substantive law of Ohio controls does not significantly alter the analysis of this issue. The Court discerns no great difference in the defamation law of West Virginia and Ohio. Both states recognize a qualified privilege. The Court holds that under the law of Ohio the setting of the alleged slander here falls within the protection of a qualified privilege. The Court disagrees with the Defendant, however, that the Defendant's agent did not abuse his privilege as a matter of law. This question is for the jury to decide. The Plaintiff refers to evidence which will be introduced to show actual malice on the part of the Defendant's agent. Such a showing, together with falsity, may defeat the privilege.

2. *Libel:* The Defendant points out that the Plaintiff's complaint may be interpreted as stating a claim for libel based upon the letters which the Defendant sent to its policy holders, clients of the Plaintiff. Indeed, the Plaintiff does argue in his memorandum in opposition to the Defendant's motion that he was defamed by the letters. The Court disagrees. The letter to the policyholders was cast in neutral language. The Plaintiff argues that the words "Stephen Snuffer Agency is no longer a licensed representative of our Company" inferred that the Plaintiff had had his license revoked. A reading of the entire letter, however, makes it clear that the Defendant only wished to inform its policy holders that the relationship between the Plaintiff and the Defendant had been severed. So clear is the message that the Court must hold as a matter of law that the letters were not defamatory.

3. *Breach of Contract:* The Plaintiff alleges that the Defendant breached his contract with him by failing to give thirty days notice of cancellation. The Plaintiff does not deny that the Defendant mailed a notice of cancellation by certified mail. The Plaintiff claims, however, that he did not actually receive the notice. Since the Defendant does not contend that the Plaintiff actually received the notice, the key issue is the effect of the certified mailing by the Defendant.

The Plaintiff argues that since the contract does not provide how notice is to be given, it is not effective until the Plaintiff actually receives it. He does not cite any West Virginia cases in support of this proposition. Under the unique facts of this case, the Court holds that whether the Plaintiff actually received the notice is irrelevant. The contract between the parties here provides that notice of cancellation is to be in writing. With such a provision it was quite reasonable for the Defendant to desire some proof of its delivering notice to the Plaintiff. Mailing by certification is commonly accepted as a measure to gain such proof. In this case, the postal authorities represented that they deposited notification of the certified letter in the Plaintiff's postal box on two different occasions. Both times the notice slip was ignored. The Plaintiff offers no reason for why he did not claim his certified mail. He merely argues that the words of cancellation did not come before his eyes. The Court cannot allow the Plaintiff to close his eyes to

the obvious and then seek relief. The uncontroverted facts show that the Defendant mailed the contractually required notice to the Plaintiff's address, the same address listed on the Plaintiff's complaint. Hence, the Court holds that the Plaintiff received constructive notice and that his breach of contract claim must fail.

4. *Intentional Breach of Contract:* In addition to breach of contract, the Plaintiff also alleges that the Defendant *intentionally* breached its contract with the Plaintiff. For the reasons stated in *Cotton v. Otis Elevator Co.,* 627 F.Supp. 519 (S.D.W. Va.1986), the Court holds that this theory must also fail.

█ A breach of contract action cannot be turned into one sounding in tort merely because the Plaintiff alleges intent or bad faith on the part of the breaching party. The theory is still contractual in nature. As discussed above, the Court has held that the Defendant did not breach its contract with the Plaintiff.

█ 5. *Retaliatory Discharge:* The Plaintiff vaguely argues that the alleged bad motive of the Defendant creates a separate cause of action for the Plaintiff under the decision in *Harless v. First National Bank in Fairmont,* 162 W.Va. 116, 246 S.E.2d 270 (1978). *Harless* imposed liability on an employer for terminating an at-will employee in violation of a substantial public policy. The *Harless* court found the motive of the Defendant employer to be legally actionable because of the violence done to a substantial public policy. The Plaintiff here does not identify any public policy, substantial or otherwise, which was violated by the Defendant. A bad motive or malicious feelings do not, in a vacuum, create liability. Thus, the Court holds that the Plaintiff does not state a cause of action for retaliatory discharge.

█ 6. *Tortious Interference With Business Relations:* The parties did not cover this theory in much detail in briefing the Defendant's summary judgment motions. It is obvious, however, from the complaint and the remarks of Plaintiff's counsel at conference that the Plaintiff is going forward with this theory. Plaintiff alleges that the Defendant prevented him from selling his insurance agency to others. Hence, the Plaintiff purports to make out a case for the tort outlined in Section 766B of the Restatement (2d) of Torts: *Intentional Interference with Prospective Contractual Relation.* Under this section, the actor must intend to interfere and his interference must be improper. These elements make this theory one particularly appropriate for jury consideration.

### Conclusion

In consideration of the foregoing, the Court reaffirms its pronouncement at the pretrial conference, that the trial of this action shall pertain to the torts of slander and interference with business relations. The Court, therefore, enters summary judgment in favor of the Defendant on all other theories or claims presented by the Plaintiff.

The Clerk is directed to send a certified copy of this Memorandum Opinion and Order to counsel of record.