Richard Heiderman, Jeffersonville, Ind., for plaintiffs.

Richard T. Mullineaux, Lee Buchanan, New Albany, Ind., for defendants.

STECKLER, District Judge.

**Virginia S. FORD, John W. Ford**

**v.**

**JOHNS-MANVILLE SALES CORPORATION, et al.**

**Della Mae WARREN, William H. Warren**

**v.**

**JOHNS-MANVILLE SALES CORPORATION, et al.**

**Hazel M. McDOWELL**

**v.**

**JOHNS-MANVILLE SALES CORPORATION, et al.**

**Martha E. GROCE, Kenneth Groce**

**v.**

**JOHNS-MANVILLE SALES CORPORATION, et al.**

**Nos. IP 81-371-C, IP 81-308-C, IP 81-365-C and IP 81-245-C.**

United States District Court, S.D. Indiana, Indianapolis Division.

June 22, 1987.

(2) their contacts with the forum are insufficient to meet the minimum contacts and fundamental fairness requirements of due process; and (3) that under international law the Court cannot assert jurisdiction over them. These identical arguments were rejected by the Honorable S. Hugh Dillin in *Morris v. Asbestos Corp., supra.* The Court in *Morris* carefully reviewed the defendants' relations with the State of Indiana and held that the Court's exercise of personal jurisdiction over the defendants was consistent with the dictates of due process and international law. This Court follows the thorough and well-reasoned opinion of the Court in *Morris* and hereby DENIES the defendants' motions to dismiss for the reasons stated in *Morris v. Asbestos Corp., supra.* A copy of that opinion is attached and made a part hereof.

STECKLER, District Judge.

Defendants Asbestos Corporation, Ltd. ("ACL") and Bell Asbestos Mines, Ltd. ("Bell") have filed identical motions to dismiss in each of the above-entitled causes of action. Relying on *Sandra K. Morris v. Asbestos Corporation, Ltd., Bell Asbestos Mines, Ltd., et al.,* No. 81–C–70 (S.D.Ind. Sept. 5, 1986) (order denying defendants' motion to dismiss), the Court concludes that the motions must be denied.

Pursuant to Fed.R.Civ.P. 12(b)(2) the defendants move the Court to dismiss for lack of personal jurisdiction. Specifically the defendants contend that: (1) they do not fall within the reach of the Indiana "long-arm" statute contained in T.R. 4.4;

## APPENDIX

### UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF INDIANA INDIANAPOLIS DIVISION

Sandra K. Morris, as Administratrix of the Estate of Lexie M. Kennedy, Plaintiff,

-vs-

Asbestos Corp., Ltd., Bell Asbestos Mines, Ltd., et al., Defendants.

Nos. IP 81–70–C, IP 81–94–C, IP 81–163–C, IP 81–243–C, IP 81–291–C, IP 81–293–C, IP 81–307–C, IP 81–367–C, IP 81–555–C, IP 81–1091–C, IP 81–1095–C, IP 81–1097–C and IP 81–1102–C

### ENTRY

Defendants Asbestos Corporation, Ltd. ("ACL") and Bell Asbestos Mines, Ltd. ("Bell") have filed identical motions to dismiss in each of the above entitled causes of action. The motions are denied.

The motions are made pursuant to Rule 12(b)(2), F.R.Civ.P., alleging that this Court does not have personal jurisdiction over these defendants. Plaintiffs carry the burden of proof as the parties asserting jurisdiction. *Nelson by Carson v. Park Industries, Inc.,* 717 F.2d 1120 (7th Cir.1983), *cert. denied,* 465 U.S. 1024, 104 S.Ct. 1277,

79 L.Ed.2d 682 (1984). However, when the decision is to be made on the submission of written material, as is true in this case, the burden is met by a prima facie showing that personal jurisdiction is conferred under the relevant jurisdictional statute. *Id.*

Sitting in diversity, we apply the long-arm statute of the forum state, here Indiana. See Rule 4, F.R.Civ.P.; *Park Industries, supra.* The applicable Indiana statute provides for jurisdiction over any nonresident person or organization

> (1) doing any business in this state; ...
>
> (3) causing personal injury or property damage in this state by an occurrence, act or omission done outside this state if he regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue or benefit from goods, materials, or services used, consumed, or rendered in this state[.]

Ind.Tr.R. 4.4. These subdivisions of Rule 4.4 have been interpreted as providing Indiana courts with the outermost jurisdiction allowed by the due process clause of the United States Constitution. *W & W Farms, Inc. v. Chartered Systems Corp.,* 542 F.Supp. 56 (N.D.Ind.1982). *See Nu-Way Systems of Indianapolis, Inc. v. Belmont Marketing, Inc.,* 635 F.2d 617 (7th Cir.1980); *Oddi v. Mariner-Denver, Inc.,* 461 F.Supp. 306 (S.D.Ind.1978); *Griese-Traylor Corp. v. Lemmons,* 424 N.E.2d 173 (Ind.App.1981). We, thus, bypass an examination of the Indiana act and look to the outer limits of what due process permits. *See Oddi, supra.*

Due process requires that, in order to exercise personal jurisdiction over a nonresident defendant, the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citations omitted). To determine whether or not a defendant has the minimum contacts required by due process, courts must make a careful review of the affiliating circumstances. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

Although the defendants here share many of the same affiliating circumstances, we review each of them separately. Bell is a Canadian corporation with its only office at Thetford Mines, Quebec. It employs approximately 600 people. At Thetford Mines, Bell mines asbestos fiber from the earth. Bell does not perform any manufacturing upon the fiber. It sells the asbestos fiber to commercial buyers throughout the world. The fiber is used in the manufacture of over 3,000 products.

All of the asbestos sold to United States buyers is sold F.O.B. Thetford Mines. Bell receives purchase orders at Thetford Mines and all payments are made there.

Since at least 1956, Bell has sold its asbestos fiber to six Indiana manufacturing companies, located throughout the state. The shipments to Indiana comprised less that 1% of Bell's sales during any relevant period. Other than these shipments made directly to Indiana plants, and receiving orders by mail or phone, Bell has had no other contacts with Indiana.

ACL is a Canadian corporation located in Quebec. It mines asbestos fiber in Quebec and does not perform any manufacturing upon the fiber.

ACL sold all of its asbestos F.O.B. Quebec and all payments were made to ACL to Quebec. Worldbestos, the Indiana plant central to the instant dispute, received a substantial amount of its asbestos from ACL.

ACL representatives from Canada and Detroit solicited sales in Indiana. These agents included both ACL employees and at least one sales representative.

In *World-Wide Volkswagen, supra,* the Supreme Court analyzed the minimum contacts requirement where a defendant places a product in the stream of commerce. The Court rejected the proposition that personal jurisdiction is present wherever a defendant might foresee that his product would rest: "Every seller of chattels would in effect appoint the chattel his

agent for service of process. His amenability to suit would travel with the chattel." *World-Wide Volkswagen,* 444 U.S. at 296, 100 S.Ct. at 566. Thus, a New York car dealership, having sold a car to a New York resident, was not subject to the personal jurisdiction of the Oklahoma courts simply because it was foreseeable that the car might travel to Oklahoma. Minimum contacts could not be culled from such a single, isolated, and fortuitous occurrence. The Supreme Court did not, however, wholly reject foreseeability:

> This is not to say, of course, that foreseeability is wholly irrelevant. But the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.... The Due Process Clause, by ensuring the "orderly administration of the laws," ... gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.
>
> When a corporation "purposefully avails itself of the privilege of conducting activities within the forum State," ... it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State. Hence, if the sale of a product of a manufacturer or distributor ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. *The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.*

*World-Wide Volkswagen,* 444 U.S. at 297–98, 100 S.Ct. at 567–68 (citations omitted) (emphasis added).

Defendant Bell repeatedly delivered its asbestos into the stream of commerce with the expectation that it would reach the Indiana market. ACL did the same and solicited sales in Indiana. *See Wisconsin Electrical Mfg. Co. v. Pennant Prods. Inc.,* 619 F.2d 676 (7th Cir.1980). The defendants' service to and use of the Indiana market was not random, fortuitous, nor isolated. *See Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984). By selling asbestos to Indiana companies, knowing that their product was to be shipped to Indiana, defendants purposefully derived substantial revenue from materials consumed in Indiana.

Our application of the stream of commerce standard is entirely consistent with Seventh Circuit application. *See Park Industries, supra* (finding that a foreign defendant need only be "more than possibly aware" of a product's distribution system). It is also consistent with application of the Illinois long-arm statute under identical facts. *See McDaniel v. Johns-Manville Sales Corp.,* 487 F.Supp. 714 (N.D.Ill.1978). It also follows *Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961), cited by the Supreme Court in *World-Wide Volkswagen* for the holding that a forum State may constitutionally assert personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State. 444 U.S. at 298, 100 S.Ct. at 567.

Defendants next contend that standards of international law dictate that personal jurisdiction may not be exercised over them in Indiana. In support of this proposition, defendants rely upon the Restatement (Second) of Foreign Relations Law of the Unit-

ed States, section 18. We note that we are, of course, not bound by the law as set forth in restatements. The sole Seventh Circuit decision citing section 18 is inapposite to the instant cause. *See Tamari v. Bache & Co. (Lebanon) S.A.L.*, 730 F.2d 1103 (7th Cir.), *cert. denied*, 469 U.S. 871, 105 S.Ct. 221, 83 L.Ed.2d 151 (1984) (dispute between Lebanese citizens and a Lebanese corporation over the court's subject matter jurisdiction as derived from a congressional statute).

Even if we were to apply section 18, none of the authorities cited by defendants, nor any found by this Court, apply section 18 in the narrow manner urged upon us by defendants. Section 18(a):

> A state has jurisdiction to prescribe a rule of law attaching legal consequences to conduct that occurs outside its territory and causes an effect within its territory, if ...
>
> (a) the conduct and its effect are generally recognized as constituent elements of a crime or tort under the law of states that have reasonably developed legal systems....

Restatement (Second) of Foreign Relations Law of the United States, § 18(a) (1965).

According to defendants, this passage necessitates that the causes of action relied upon by plaintiffs in this cause (negligence and products liability) be generally recognized amongst the nations before personal jurisdiction is present here. Defendants then note that few nations beyond the United States adhere to the law of strict products liability (e.g., Canada, Mexico, West Germany). As noted *supra*, no cases have been found which have applied this section in such a manner. We reject defendants' narrow reading of section 18(a) and rely, instead, upon the core requirement of a "reasonably developed legal system." Both the negligence and products liability law of the United States is that of a reasonably developed legal system.

Our second consideration is of the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602, *et seq.* That Act provides that while foreign sovereigns generally have immunity from United States courts, *id* § 1604, some instances will support jurisdiction of the United States courts. *Id.* § 1605. One such instance is where a foreign sovereign engages in commercial activity outside of the United States that causes a direct effect within the United States. *Id.* § 1605(a)(2).

Defendant Bell notes that its stock is owned 100% by the Societe Nationale de L'amiante, an agency of the Province of Quebec. This may be true, but because of the commercial activity engaged in by Bell (see minimum contacts discussion, *supra*), that corporation is subject to this Court's jurisdiction by operation of the exception provided by said section 1605(a)(2).

We find that the commercial activity engaged in by ACL in the Indiana marketplace (see minimum contacts discussion, *supra*) is sufficient to invoke personal jurisdiction over that corporation as well. *See Chittenden Trust Co. v. LaChance*, 464 F.Supp. 446 (D.Vt.1978).

Dated this 5th day of September, 1986.

/s/ S. Hugh Dillin
S. Hugh Dillin, Judge