**SOUTH CENTRAL INSURANCE CORP., d/b/a Sam Dunlap Insurance Agencies, Plaintiff,**

v.

**BALBOA INSURANCE COMPANY, et al., Defendants.**

**No. EC87–153–S–D.**

United States District Court, N.D. Mississippi, E.D.

Oct. 11, 1990.

Dewitt T. Hicks, Jr., Columbus, Miss., Harold Brown, J. Lee Riccardi, Boston, Mass., Morris W. Macey, Atlanta, Ga., David Schwartz, San Francisco, Ca., for plaintiff.

David Sanders, Richard H. Span, Columbus, Miss., for defendants Balboa Ins. Co. and Meritplan Ins. Co.

Ross F. Bass, Jr., William C. Brabec, Jackson, Miss., for defendant Robert Lindquist.

OPINION

SENTER, Chief Judge.

Defendant Robert Lindquist has filed two Fed.R.Civ.P. 12(b) motions. The first deals with whether this court has jurisdiction over his person, while the other alleges that plaintiff has failed to state a claim upon which relief can be granted.

PROCEDURAL BACKGROUND

This cause is based on the alleged wrongful termination of a general agency agreement between plaintiff South Central Insurance Agencies and defendants Balboa

and Meritplan (collectively Balboa or the Balboa defendants) entered into on March 1, 1983. The Balboa defendants are California corporations. Defendant Lindquist, a former Balboa executive vice president, currently resides in Florida. The sole basis for jurisdiction is diversity of citizenship.

Much of this litigation has been delayed by procedural jockeying. Plaintiff moved for a preliminary injunction to prevent the Balboa defendants from asserting in any other court claims arising out of the instant matter. This request was specifically aimed at a motion to compel arbitration filed by Balboa in the United States District Court for the Central District of California.

This court refused to issue the injunction because it was believed that a final decision of arbitrability should come from the California district judge. Proceedings here were stayed pending termination of the arbitration process.

The California court initially compelled arbitration; on reconsideration, however, arbitration was stayed in California pending resolution of the instant action. The United States Court of Appeals for the Ninth Circuit affirmed. *Balboa Insurance Co. v. South Central Agencies Corp.*, 902 F.2d 38 (9th Cir.1990) (unpublished opinion available on WESTLAW, CTA9 database). Both the California district court and the court of appeals reasoned that since Lindquist was a non-signatory to the agency agreement (which contained an arbitration clause), there was a possibility of conflicting rulings on common issues of law and fact, thereby permitting under California law (which, by the terms of the agreement, governed) a stay of the arbitration.

A status conference held in the instant case resulted in defendant Lindquist being allowed to file an amended motion to dismiss. This has afforded the court an opportunity finally to determine Lindquist's status as a party.

## DISCUSSION

It may be elementary that, in determining whether a nonresident should be required to defend himself in a Mississippi court, "each case must be decided on its own facts." *Southwest Offset, Inc. v. Hudco Publishing Co., Inc.*, 622 F.2d 149, 151 (5th Cir.1980). This concept assumes greater importance when having to account for the peculiar circumstances presented here.

### I.

The 1983 agency agreement between South Central and Balboa was premised on the marketing of homeowners' insurance throughout Mississippi. In late summer, 1985, Hurricane Elena struck the Mississippi Gulf Coast and caused a great deal of activity with respect to homeowners' insurance. It is alleged that Balboa's regional office in Pensacola, Florida, through which hurricane losses were being handled, grossly overpaid claims submitted by insureds. These payments were posted against South Central's account.

It is further alleged that Robert Lindquist, who had served as Balboa's executive vice president since August, 1984, misperceived the high ratio of losses compared with premium income and, as a result, developed a prejudice against South Central to the extent of personally participating in a scheme to terminate the general agency agreement.

Plaintiff has submitted the affidavit of Charles K. Landrum, a former Balboa employee, who was instructed by Lindquist to draft a letter "that would terminate South Central in the minimum possible amount of time under the general agency agreement." According to Mr. Landrum, the letter which was ultimately sent "was the most punitive termination that I have ever witnessed in the division of Balboa in which I worked." Furthermore, at the time Landrum was given instructions, Lindquist knew or had been advised that South Central had not purposely misrepresented loss reports arising from Hurricane Elena; that Balboa's own claim offices had mishandled the claims; and that South Central's adverse loss ratios were caused in large part by Balboa's extremely conservative reserve policies and by a natural disaster. It is

plaintiff's theory that it simply was made the scapegoat.

The agency agreement was reinstated two months following the November, 1985, termination. Two months later, however, "in fulfillment of defendant's deceptive scheme," South Central was again terminated. Lindquist, who was relieved of his duties in February, 1986, was not involved in the reinstatement or second termination of the general agency agreement.

Three counts of the amended complaint are directed against Lindquist. Two arise under sections of the Mississippi code—the Consumer Protection Act and the Franchise Cancellation statute—while the third is based on common law tortious interference with contractual relations. As indicated in this court's opinion denying plaintiff a preliminary injunction, all of Lindquist's actions "are alleged to have occurred in the course and scope of his employment and are asserted to be unjustified, tortious, and in breach of Balboa's obligation to fully perform according to the agreement."

Finally, as part of its response to the motion to dismiss on jurisdictional grounds, plaintiff has submitted a November 19, 1985, letter from Balboa's general counsel representing that the company: (1) evaluated South Central's business; (2) concluded that for compelling business reasons the agency agreement should be terminated; (3) was justified and fully in accord with the provisions of the agreement and with the law in effecting termination; and (4) declined a request to reconsider its position.

## II.

Normally, a two-step process is applied to determine whether suit can be maintained in this forum against a nonresident: "First, the law of the forum state must provide for the assertion of such jurisdiction; and second, the exercise of jurisdiction under state law must comport with the dictates of the fourteenth amendment due process clause." *Smith v. DeWalt Products Corp.*, 743 F.2d 277, 278 (5th Cir.1984) (footnote omitted).

## A.

This court frankly is unsure whether the Mississippi Supreme Court would allow the long arm statute to reach as far as defendant Lindquist. The decisional law of this state is that "ordinarily an authorized agent for a disclosed principal cannot be held liable for the acts of the agent's corporate principal." *Thames & Co. v. Eicher*, 373 So.2d 1033, 1035 (Miss.1979). *See also Griffin v. Ware*, 457 So.2d 936, 940 (Miss. 1984) (adjusters employed by insurer, who were not parties to the agreement for insurance, are not subject to an implied duty of good faith and fair dealing to the insured). On the other hand, "the general rule is well established that when a corporate officer directly participates in or authorizes the commission of a tort, even on behalf of the corporation, he may be held personally liable." *Mississippi Printing Co., Inc. v. Maris, West & Baker, Inc.*, 492 So.2d 977, 978 (Miss.1986) (citations omitted). *See also Mozingo v. Correct Manufacturing Corp.*, 752 F.2d 168, 174 (5th Cir.1985) (thrust of general rule contemplates defendant being guiding spirit behind wrongful conduct or central figure in challenged corporate activity).

From a pleadings standpoint, plaintiff has attempted to cover all bases for obtaining long arm jurisdiction under the only applicable branch of the statute: "Any nonresident person ... who shall commit a tort in whole or in part in this state against a resident ... of this state ... shall by such act or acts be deemed to be doing business in Mississippi." Miss.Code Ann. § 13–3–57. The only event which actually occurred in this state was the injury suffered by a Mississippi insurance agency in its dealings with local underwriting agents and customers. *See Smith v. Temco, Inc.*, 252 So.2d 212, 216 (Miss.1971) ("The tort is not complete until the injury occurs, and if the injury occurs in this State, then, under the ... statute, the tort is committed, at least in part, in this State, and personam jurisdiction of the nonresident tortfeasor is conferred upon the Mississippi court."). *Cf. Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d

612, 619 (5th Cir.1989) (tort of conversion of property was not completed until unlawful dominion occurred, and such took place wholly outside Mississippi; economic consequences of tort in state insufficient to confer jurisdiction).

Plaintiff has even alleged Lindquist acted in bad faith in committing tortious interference with those contractual relations. *See Shaw v. Burchfield*, 481 So.2d 247, 254–55 (Miss.1985) (defining cause of action with caveat that "one occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third person"). *See also Vestal v. Oden*, 500 So.2d 954 (Miss.1986) (quoting *Shaw* at great length); *Irby v. Citizens National Bank of Meridian*, 239 Miss. 64, 121 So.2d 118, 119 (1960) (outlining elements of tort).

This court will not attempt to reconcile these concepts on an undeveloped record in order to guess whether the Mississippi Supreme Court would extend the reach of the long arm statute to defendant Lindquist. Even assuming that plaintiff has made the requisite minimum showing of long arm jurisdiction, plaintiff's efforts to hale him into this court fail on a more substantial ground.

### B.

Under the second prong of *Smith v. De-Walt's* analysis, "federal courts are not bound by state court determinations of what the Constitution requires." *Southwest Offset, Inc.*, 622 F.2d at 152 (footnote omitted). It is therefore necessary to discuss the "familiar body of United States Supreme Court case law," *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1168 (5th Cir.1985), addressing due process requirements for the assertion of personal jurisdiction over a nonresident.

The *Thompson* panel beat this court to the punch as far as an introduction for this subject goes. Nevertheless, we choose also the summary contained in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984):

> The Due Process Clause of the Fourteenth Amendment operates to limit the power of a State to assert in personam jurisdiction over a nonresident defendant.... Due process requirements are satisfied when in personam jurisdiction is asserted over a nonresident corporate defendant that has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" ... When a controversy is related to or "arises out of" a defendant's contacts with the forum, the Court has said that a "relationship among the defendant, the forum, and the litigation" is the essential foundation of in personam jurisdiction....

> Even when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its in personam jurisdiction when there are sufficient contacts between the State and the foreign corporation....

*Id.* at 413–14, 104 S.Ct. at 1871–72 (citations and footnotes omitted).

Of course, "the victim of [a] tort ... may choose to bring suit in any forum with which the defendant has 'certain minimum contacts ... such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780–81, 104 S.Ct. 1473, 1481–82, 79 L.Ed.2d 790 (1984) (citations omitted). Likewise, states have an interest in exercising judicial jurisdiction over those who commit torts within their territory. *Id.* at 776–77, 104 S.Ct. at 1479–80. And, in this era of great technological advances, "[t]he limits imposed on state jurisdiction by the Due Process Clause, in its role as guarantor against inconvenient litigation, have been substantially relaxed over the years." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 565, 62 L.Ed.2d 490 (1980).

The strongest authority in plaintiff's favor for the assertion of personal jurisdiction over Lindquist is *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). In that case, two National Enquirer reporters who resided in Florida wrote a defamatory article about a California entertainer who sued them and their employer in California. The Court held that jurisdiction there was proper because "California [was] the focal point both of the story [where the sources were drawn] and of the harm suffered," *id.* at 789, 104 S.Ct. at 1486, and that these individuals were "primary participants in an alleged wrongdoing intentionally directed at a California resident." *Id.* at 790, 104 S.Ct. at 1487.

However, the Court also emphasized that "[e]ach defendant's contacts with the forum State must be assessed individually." *Id.* (citation omitted). That exercise in the instant case persuades this court that Lindquist's contacts with Mississippi are too "'random,' 'fortuitous,' or 'attenuated.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (citations omitted). No tort was committed in this state, and it is not asserted that Lindquist had any connection with Mississippi, except for allegedly injuring a corporation domiciled in this state. As for that aspect,

> [a]lthough it has been argued that foreseeability of causing *injury* in another State should be sufficient to establish such contacts there when policy considerations so require, the Court has consistently held that this kind of foreseeability is not a "sufficient benchmark" for exercising personal jurisdiction.... Instead, "the foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."

*Id.* at 474, 105 S.Ct. at 2183 (1985) (citations and footnote omitted) (emphasis in original).

Absent from the instant record are "those affiliating circumstances that are a necessary predicate to any exercise of state-court jurisdiction." *World–Wide Volkswagen*, 444 U.S. at 295, 100 S.Ct. at 566. This is not the situation where "a publisher who distributes magazines in a distant State may fairly be held accountable in that forum for damages resulting there from an alleged defamatory story." *Burger King Corp.*, 471 U.S. at 473, 105 S.Ct. at 2182 (citing *Keeton* and *Calder*). This cause of action arises from a breach of contract "[a]nd with respect to interstate contractual obligations, we have emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Id.* (citations omitted). While there is no question of Balboa's amenability, there is no intimation that Lindquist exceeded his authority or neglected his duty in initially terminating a contract to which only his principal was a party and that his principal ultimately terminated, anyway. Whether Lindquist's decision was right or wrong, his participation is not such as would "'give[ ] a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id.* at 472, 105 S.Ct. at 2182 (citation omitted). It is also difficult to perceive how Mississippi has a greater interest than California in this matter when both contracting parties agreed to be bound by California law and the only reason arbitration could not be accomplished in California was due to the addition of Lindquist as a party here.

The burden has not been met that the quality and nature of Lindquist's performance of a duty within the course and scope of his corporate office "stem[s] from a constitutionally cognizable contact with [Mississippi]." *World–Wide Volkswagen*, 444 U.S. at 299, 100 S.Ct. at 568. Having also reviewed the allegations of statutory violations committed by Lindquist, this court is of the opinion that their application to him is doubtful; regardless, for jurisdictional purposes, they fall within the same

analysis as has been given the common law tort.

An appropriate order shall issue.

## ORDER DISMISSING DEFENDANT ROBERT LINDQUIST

For the reasons given in an opinion filed contemporaneously herewith, IT IS ORDERED:

That the motion of defendant Robert Lindquist, pursuant to Fed.R.Civ.P. 12(b)(2), is well taken and is granted.

SO ORDERED.