J^PLOTKIN, Judge.
The sole question in this appeal is whether the defendants, Fisherman Marine Products, Inc. and the M/V Fisherman XIII (hereinafter referred to collectively as “Fisherman”), have sufficient minimum contacts with the state of Louisiana to justify the assertion of general jurisdiction by Louisiana courts. Plaintiffs June B. and Curtis R. Curran appeal a trial court judgment dismissing their suit for lack of personal jurisdiction. For the reasons described below, we affirm.
The suit underlying this appeal is a personal injury claim arising out of injuries Mr. Curran received on May 25, 1990, while he was engaged in the course and scope of his employment with Fisherman as a part of the crew of the MW Fisherman XIII. Mr. Curran allegedly suffered injuries when he slipped and fell while washing the vessel in heavy seas. According to the Currans, the proximate cause of Mr. Curran’s accident was the unseaworthiness of the vessel. Mr. Curran seeks maintenance and cure under the provisions of the Jones Act, 46 U.S.C.A. § 688, and Mrs. Curran seeks damages for loss of consortium.
| ^Fisherman, which was served with the Currans’ petition under the Louisiana Long-Arm Statute, LSA-R.S. 13:3201 et seq., responded by filing a number of exceptions, including a declinatory exception of lack of personal jurisdiction. Following a trial on the exception, the trial judge maintained the exception of lack of personal jurisdiction and dismissed the Currans’ cause of action. The Currans filed a motion for new trial, which was denied by the trial court. The Currans appeal.
Louisiana’s Long-Arm Statute allows Louisiana courts to exercise personal jurisdiction over a defendant “on any basis consistent with the constitution of this state and of the Constitution of the United States.” LSA-R.S. 13:3201(B). Thus, under current Louisiana law, “the sole inquiry into jurisdiction over a nonresident is a one-step analysis of the constitutional due process requirements.” Ruckstuhl v. Owens Corning Fiberglas Corp., 98-1126, p. 5 (La.4/13/99), 731 So.2d 881, 885, cert. denied, Hollingsworth & Vose Co. v. Ruckstuhl, 528 U.S. 1019, 120 S.Ct. 526,145 L.Ed.2d 407 (1999), quoting Petroleum Helicopters, Inc. v. Avco Corp., 513 So.2d 1188 (La.1987). The constitutional due process test for determining personal jurisdiction, established by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), requires that a defendant “have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.” Ruckstuhl, 98-1126 at 6, *287 731 So.2d at 885, citing International Shoe, 326 U.S. at 320, 66 S.Ct. at 160. Though the due 13process inquiry is considered a “one-step analysis,” the following “two-part test” has developed: (1) the “minimum contacts” prong, and (2) the “fairness of the assertion of jurisdiction” prong. Ruckstuhl, 98-1126 at 6, 731 So.2d at 885. If a court determines that one (or both) of the above “prongs” is not satisfied in a given case, the suit must be dismissed for lack of personal jurisdiction.
The minimum contacts prong has been further refined by Louisiana courts, depending on the type of personal jurisdiction sought to be exercised in the case: (1) specific jurisdiction, or (2) general jurisdiction. See Babcock & Wilcox Co. v. Babcock Mexico, S.A. de C.V., 597 So.2d 110, 112 (La.App. 4 Cir.), unit denied, 600 So.2d 679 (La.1992). Generally, a state asserts specific jurisdiction “when the lawsuit arises out of the defendant’s contacts with the forum.” B. Glenn George, “In Search of General Jurisdiction,” 64 Tul. L.Rev. 1097, 1099 (May 1990). On the other hand, a state asserts general jurisdiction when “the defendant’s contacts with the forum ... are unrelated to the cause of action.” Id.
When a state seeks to assert specific jurisdiction over a defendant, the minimum contacts prong of the due process analysis is satisfied “if the defendant has purposefully directed his activities at residents of the forum.” deReyes v. Marine Management and Consulting, Ltd., 586 So.2d 103, 106 (La.1991), citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). According to the deReyes decision, this rule “ensures that [the defendant] will not be haled into a jurisdiction solely as a result of a random, fortuitous or attenuated contact, or by the unilateral activity of another party or a third person.” |4586 So.2d at 106. However, a non-resident defendant is considered to have minimum contacts with the forum state for purposes of general jurisdiction only if it engages in “continuous and systematic activities” in the forum. Id. at 108. Thus, this court has held that “much more substantial contacts with the forum state are required to establish general, as opposed to specific, jurisdiction.” Bosarge v. Master Mike, Inc., 95-0986, p. 3 (La.App. 4 Cir. 1/31/96), 669 So.2d 510, 512, writ denied, 96-0397 (La.3/22/96), 669 So.2d 1214. In fact, the contacts must be “so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.” International Shoe Co., 326 U.S. at 318, 66 S.Ct. at 159, 90 L.Ed. at 95. One writer even has suggested that a state should not assert general jurisdiction over a non-resident corporation unless a corporate office is located in the forum. George, supra, 64 Tul. L.Rev. at 1129. However, Louisiana has not adopted such a limited rule.
Although the petition is silent concerning the location of the M/V Fisherman XIII at the time Mr. Curran’s injury, the Currans claim in brief that the vessel was located in the waters off the coast of Mississippi, “in the vicinity of Louisiana waters.” Captain Marvet Johnson, captain of the M/V Fisherman XIII at the time of the accident, testified at the trial of the exception that the vessel was located some 14 to 15 miles offshore at the time, in Mississippi, close to Alabama. Thus, the Currans urge Louisiana courts to exercise general jurisdiction over Fisherman, |fisince the cause of action arises out of activity unrelated to any of Fisherman’s activity in the state of Louisiana.
According to the testimony of Charles M. Weston Sr., general manager of the corporation, Fisherman is an Alabama corporation, located in Bayou LeBatre, Alabama, with no offices in Louisiana. Mr. Weston indicated in his deposition that the primary business of the company is the sale of ice and fuel. However, the company has also owned some 15 shrimping vessels since 1978, which have been numbered consecutively I through XV. The company *288 never owned more than eight vessels at one time; it owned five vessels, numbered XI through XV, at the time of Mr. Cur-ran’s accident. The company employs a crew of three for each vessel it owns at any given time. The trial testimony indicates that the vessels shrimp the Gulf of Mexico, primarily in federal waters, but sometimes in the three-mile areas along the coast belonging to the various states.
Because the vessels do occasionally shrimp in Louisiana waters, Fisherman annually purchases Louisiana fishing licenses and captain’s licenses through the mail. Moreover, the United States Coast Guard registration papers for all five vessels owned by Fisherman at the time of the trial of the exception listed New Orleans as the home port of the vessels. Mr. Weston testified that it was his understanding that all documentation papers for vessels in the Gulf of Mexico list New Orleans as the home port. Moreover, the stern of the vessels all identify Bayou Le-Batre, Alabama, as the home port, he said.
| fiMr. Weston admitted that Fisherman vessels had visited Louisiana ports at least 14 times between the years of 1988 and 1995. Moreover, the vessels had made sales of shrimp in Louisiana totaling $149,575.75 during that same seven-year period. According to his testimony, that amount represents %o of one percent of the corporation’s total product sales during that period. Moreover, no Fisherman vessels had come into Louisiana or made shrimp sales in Louisiana during the entire three-year period prior to the trial in this matter.
The Currans claim that Louisiana courts may assert general jurisdiction over Fisherman on the basis of the following contacts with the state, which they claim satisfy the minimum contacts prong of the due process analysis:
1.Annual purchases or acquisition of Louisiana commercial fishing licenses over seventeen (17) years for multiple shrimping vessels;
2. 12 to 16 sales of catches of shrimp to Louisiana companies in the period 1988-1996;
3. Three purchases of supplies, groceries, repair items and fuel in Louisiana between 1993 and 1995;
4. Shrimping in Louisiana waters by each of defendant’s vessels once or twice a year since 1978.
The instant case is controlled by this court’s opinion in Bosarge, which involved remarkably similar facts. 95-0986, 669 So.2d 510. The Bosarge case involved an Alabama resident who allegedly suffered personal injury while working as a crew member on a shrimping vessel owned by an Alabama corporation. In that case, this court found that the corporation’s six contacts with Louisiana over a four-year period were insufficient to establish general jurisdiction because they were “ad hoc and sporadic,” rather than “systematic and continuous.” 17Id. at 3, 669 So.2d at 512. Moreover, the court found that the corporation’s purchase of Louisiana vessel and gear licenses were insufficient to establish general jurisdiction. This court is bound by that opinion in deciding the instant case.
Mr. Weston’s deposition testimony in this case indicates that virtually all of Fisherman’s contacts with the State of Louisiana occurred either when one of the vessels had an emergency and was forced to come into port, or when the crew needed fuel or groceries. In those cases, the catch was sometimes sold, if that action was deemed necessary by its perishable nature. Nevertheless, the company’s five boats had visited Louisiana ports only some 14 times in an eleven-year period. When averaged out, Fisherman’s contact with Louisiana over the eleven year period was less frequent than Master Mike’s contact with Louisiana over the five-year period. It follows therefore that Fisherman’s contacts with Louisiana, like Master Mike’s contacts with Louisiana, were “ad hoc and sporadic,” not “systematic and continuous.” Moreover, the purchase of Louisiana fishing licenses is insufficient to *289 support the assertion of general jurisdiction. Bosarge, 95-0986 at 3, 669 So.2d at 512. Finally, we place no significance on the fact that the Coast Guard documentation listed New Orleans as the home port of Fisherman’s vessels, in the absence of a more definite explanation of that fact. Under the rules established by this court in Bosarge, the trial court properly found that Fisherman had insufficient contacts with Louisiana to support general jurisdiction.
Given our finding that Fisherman did not have the necessary “minimum contacts” with Louisiana to support general jurisdiction, we pretermit discussion of the “fairness of assertion of jurisdiction” prong of the due-process analysis for ^determining whether Louisiana courts may assert jurisdiction over Fisherman. We affirm the trial court judgment dismissing the Currans’ case against Fisherman.
AFFIRMED.
ARMSTRONG, J., CONCURS.