OPINION OF THE COURT
Elliott Wilk, J.
This CPLR article 78 proceeding raises the question of *391 whether the New York Franchise Sales Act (Franchise Act), article 33 of the General Business Law, bans negotiations of the terms of a proposed franchise agreement between a franchisor and a prospective franchisee after an offering prospectus has been filed with the Attorney-General of the State of New York.
General Business Law § 683 (2) requires that an offering prospectus must be registered with the Attorney-General prior to the offer or sale of franchises in this State. Material changes to the information contained in the original prospectus must also be registered as amendments (General Business Law § 683 [9]). This dispute arose when the Southland Corporation, a major franchisor, known principally for its operation and franchising of 7-Eleven stores, attempted to register an amendment to its prospectus previously filed with the Attorney-General.
After the registration of the prospectus, Southland entered into negotiations with the Riese Organization to grant to Riese exclusive licensing rights to 7-Eleven stores in the Borough of Manhattan. After the successful completion of these negotiations, Southland attempted to amend the prospectus.
Southland informed the Attorney-General that registration of the amendment, which would give Riese the exclusive license, had to be accomplished no later than December 15, 1989 for the Riese-Southland transaction to close, due to time constraints relating to the financing of the sale.
The Attorney-General took the position that registration of an amendment, otherwise legally sufficient, which embodies the terms of a negotiated agreement between a franchisor and potential franchisee, is a violation of the Franchise Act, and refused to register the amendment until Southland executed an "assurance of discontinuance” pursuant to Executive Law § 63 (15). In executing the assurance of discontinuance, South-land would acknowledge that the negotiations between South-land and Riese, culminating in the agreement to grant Riese the area license as set forth in the proposed amendment, constituted a violation of the Franchise Act prohibition against the offering or sale of franchises on terms other than those contained in the registered prospectus. By the terms of the assurance of discontinuance, Southland would agree to refrain from engaging in such acts in the future or be subject to a civil action by the Attorney-General, and pay required *392 costs of $1,000. Southland responded by moving to compel the Attorney-General to accept the amendment for registration.
Since the present motion and proceeding were commenced, the Attorney-General has agreed to register Southland’s amendment, permitting the Southland-Riese transaction to proceed, and petitioner has agreed to execute the assurance of discontinuance, and to pay the $1,000 costs, while reserving its right to challenge the validity of the assurance of discontinuance and fine in the present motion.
By requiring registration before any offer can be made, the New York Franchise Act clearly prohibits all contractual discussions between a franchisor and a prospective franchisee prior to the filing of a prospectus. Southland contends that there is no prohibition against contractual negotiations with prospective franchisees over the terms of the offer after the prospectus has been registered, with resulting changes reflected in an amended prospectus filed with the Attorney-General. The act does not address the propriety of postregistration negotiations. Each party believes that the act’s silence supports its position.
Southland adamantly maintains that no such prohibition is established by the act, particularly where, as here, the contractual negotiations "result in concessions favorable to prospective franchisees”. Petitioner claims that such negotiations are necessary and proper, and are expressly or impliedly permitted in the statutory schemes of a majority of the States which have enacted franchise regulatory legislation. South-land accuses the Attorney-General of engaging in illegal rule making, in violation of due process and State statutory law, by forbidding negotiations on terms other than those contained in the original prospectus.
It is the Attorney-General’s position that the act is silent on the issue of negotiation "because the concept is inimical to a statute requiring offers * * * to be made by means of a prospectus”, and because "negotiating with a prospective purchaser was never envisioned in the context of a disclosure statute, any more than purchasers of securities can negotiate the price of an initial public offering of stock.”
The registration of an offering prospectus or amendment, contends the Attorney-General, is not meant to be a mere "rubber stamping” of an already "done deal” between a franchisor and a prospective franchisee. The prospectus is intended as a means to present to the public the fixed mate *393 rial terms of the franchisor’s offer prior to the sale of the franchise. The Attorney-General agrees that the franchisor can change the offer by filing an amended prospectus, and that those changes may be "responsive to” concerns or suggestions of prospective franchisees. The Attorney-General insists, however, that the prospectus, or amended prospectus, is inherently an "instrument by which the franchise is offered to the public in a non-discriminatory way”, because "[i]f each franchisee were permitted to negotiate its own terms with the franchisor, the terms in the prospectus could not be relied upon and would be meaningless.”
Finally, the Attorney-General argues that it is not possible to determine whether or not the product of negotiations favors the franchisee and that a blanket prohibition on negotiations is necessary as a prophylactic measure to avoid potential fraud and abuse.
The Franchise Act charges the Attorney-General with the responsibilities of administering the registration and amendment processes and of enforcing the antifraud prohibitions. Generally, the interpretation placed on a statute by the agency charged with its administration will be respected by the courts, unless it is found to be irrational or unreasonable. (Matter of McGarry v Catapano & Grow Constr. Co., 44 NY2d 946 [1978].) Where the question is one of pure statutory analysis, however, dependent only on an accurate apprehension of legislative intent, the court need not rely on or defer to any special competence or experience of the administrative agency, as statutory construction is clearly within the purview of the courts. (See, Matter of Adams [Government Employees Ins. Co.], 52 AD2d 118 [1st Dept 1976], lv dismissed 40 NY2d 807 [1976]; Matter of Howard v Wyman, 28 NY2d 434, 438 [1971].) The present matter presents just such a question of statutory interpretation in a manner implicating the axiom that "an administrative agency may not by its rules expand the grant of authority from the Legislature, but must function within its mandate.” (Freitas v Geddes Sav. & Loan Assn., 63 NY2d 254, 264 [1984].)
It is the court’s responsibility to construe that statutory mandate and to do so in a manner designed to promote the purposes and intentions behind its enactment (see, Matter of Petterson v Daystrom Corp., 17 NY2d 32 [1966]), in light of the statutory scheme and the plain and unambiguous meaning of the language employed by the Legislature. (See, New Amsterdam Cas. Co. v Stecker, 3 NY2d 1 [1957].) In doing so, I find *394 that the statute’s structure, purpose and requirements reveal no legislative intent to prohibit postregistration negotiations between a franchisor and a prospective franchisee.
The Franchise Act was enacted in response to widespread fraud in the franchise industry, specifically through the use of misleading information, misrepresentations and deceptive practices, to induce people to purchase franchises. The Legislature recognized that prospective franchisees were usually in a weaker position than the franchisor. The Attorney-General stated, in urging the Governor to sign the bill, that thousands of New Yorkers complained of having been victimized by fraudulent franchise offerings and unscrupulous franchisors. The prospective franchisee was vulnerable because, in assessing an offer, it was, for the most part, forced to rely upon representations made by the franchisor concerning matters largely within the exclusive knowledge and control of the franchisor.
The remedial purpose of the act protects prospective franchisees from unscrupulous franchisors by requiring franchisors to supply prospective franchisees with all material information necessary to make an informed judgment concerning the offer. The purpose is accomplished by requiring full and accurate disclosure on the part of the franchisor through the registration of a prospectus, which deters the dissemination of incorrect information. It does not regulate the substantive terms of the offer or sale. The Attorney-General makes sure that all required information is set forth before it accepts a prospectus for filing, but does not ascertain the truthfulness of the information contained in a prospectus sought to be registered.
Respondent’s interpretation of the Franchise Act, and of the function of the offering prospectus, is rooted in the act’s similarity to the regulatory framework governing the offer and sale of securities and commodities in New York, article 23-A of the General Business Law, known as the Martin Act. Like the Franchise Act, the Martin Act was a response to deceptive sales practices and fraudulent offering schemes. It created registration and disclosure requirements, coupled with prohibitions against fraud, to provide "a remedy to those who have fallen prey to the exploitation of the public by unscrupulous individuals” (Matter of Gardner v Lefkowitz, 97 Misc 2d 806, 812 [Sup Ct, NY County 1978]).
The offering prospectus under the Martin Act functions in *395 the manner that the Attorney-General would apply to this case. It provides all material information necessary for the prospective purchaser to make a decision regarding the offer. More to the point, it concretizes the terms of the proposed sale equally for all members of the public. The terms of the sale are not negotiable.
A franchise, however, is not a "security”, which is why separate remedial legislation was necessary. A security transaction entails an investment in a common enterprise in which the investor has no practical control over his or her investment but must rely solely on the efforts of others to realize a profit. (See, e.g., Matter of Gardner v Lefkowitz, supra, 97 Misc 2d, at 813-814.) The purchase of a franchise, by contrast, results in an ongoing contractual relationship between the franchisor and franchisee pursuant to which the franchisee plays an active role in the business enterprise.
The franchise offering, therefore, represents a hybrid. Accordingly, the franchise offering prospectus contains two categories of information, corresponding to the two characteristic features of the franchise arrangement. As with a securities offering, the act mandates the registration and disclosure of concrete factual information concerning the franchisor and its business, upon which the prospective franchisee will rely in ascertaining the safety and desirability of the investment. The second category of material required to be disclosed corresponds to that aspect of the franchise which distinguishes it from a security. Because the purchase of a franchise, unlike a security, creates an ongoing active relationship between the parties, the franchisor must also set forth in the prospectus the proposed terms of their prospective contractual undertaking.
It is the "second half’ of the franchise offering prospectus, which the Attorney-General seeks to render nonnegotiable over petitioner’s objection. The Attorney-General contends that the second half is purposeful only if the law prohibits change through negotiation. I disagree.
Consistent with the statutory purpose, the recitation of proposed contractual terms enables the prospective franchisee to assess the franchisor’s initial offer. The Attorney-General’s prohibition against postregistration negotiations adds nothing to the protection against fraud afforded prospective franchisees. The franchisor may not, in any event, engage in any fraudulent activity.
*396 The proposed franchise agreement contained in the registered prospectus provides the terms which the franchisor must make available to a prospective franchisee. The franchisor cannot use the negotiating process to prevail upon a prospective franchisee to accept terms which are less favorable than those set forth in the prospectus. The Attorney-General’s contention that the act also bars negotiated terms which are more favorable to the proposed franchisee offers no protection to that party.
The Attorney-General contends that by reading the statute to bar all franchisor-franchisee negotiations, it protects the earlier franchisee by insuring that later franchisees will not be able to negotiate better terms. This constitutes a substantive contractual limitation which does not bear on the issue of fraud. The inclusion of the proposed agreement within the prospectus does not evidence an intent on the part of the Legislature to create such a substantive requirement. In fact, the statute does not purport to regulate the contractual relationship at all, or to authorize the Attorney-General to do so. (See, 100-25 Queens Blvd. Tenant Assn. v Abrams, NYLJ, May 18, 1988, at 12, col 4 [Sup Ct, NY County 1988].) No contractual provisions are specifically mandated and none are prohibited. Indeed, the Attorney-General has conceded that the franchisor may, at any time, unilaterally change the terms of the prospectus.*
The Attorney-General’s attempt to protect the rights of existing franchisees, by guaranteeing that the franchisor will not negotiate different arrangements with future franchisees, exceeds the act’s scope and contradicts its purpose. Existing franchisees are not within the zone of interests the statute seeks to protect. The Legislature intended only to strengthen the position of prospective franchisees in relation to the franchisor during the period prior to the signing of the contract. The Attorney-General’s interpretation compromises the interests of prospective franchisees in order to protect existing franchisees.
The Attorney-General’s prohibition against the negotiation of the amendments to the prospectus is inconsistent with the statutory amendment provision, which provides that the fran *397 chisor "shall promptly notify the department in writing, by an application to amend the registered offering prospectus, of any material change in the information contained in the prospectus as originally submitted or amended.” (General Business Law § 683 [9] [a].) The amendment provision imposes an obligation on the franchisor to keep the information, particularly that portion describing the franchisor and its business (the first half of the prospectus), accurate and up-to-date. This provision also enables the franchisor to alter the terms of the proposed franchise agreement (the second half of the prospectus) at will. The statute contains no limitations on the substance or frequency of amendments, nor does it require an explanation of the genesis of the amendment.
A prohibition on negotiations would transform the option to amend from a straightforward grant of flexibility into a straightjacket, to the potential detriment of all parties. It would render a prospective franchisee the equivalent of a passive purchaser of a security offered to the general public. This could not have been the intention of the Legislature.
The New York Franchise Sales Act was designed to protect prospective franchisees from franchisors. The act has been upheld, in part, on the ground that it "does not provide any substantive restrictions on the franchisor-franchisee relationship”. (Mon-Shore Mgt. v Family Media, 584 F Supp 186, 191 [SD NY 1984].) The Attorney-General has exceeded its authority by creating a substantive requirement that a franchise must be offered on terms unilaterally decided upon by the franchisor, without input from prospective franchisees via postregistration negotiations. To the extent that there exists a need to protect existing franchisees, as a group, with respect to actions by the franchisor directly or indirectly affecting their interests, including actions taken in relation to future franchise offerings, that need must be addressed by the Legislature.
Accordingly, the petition is granted.

 The Attorney-General’s own regulations even permit offers and sales to go forward on different terms before an amendment modifying the prospectus has officially been registered, as long as certain conditions are met. (See, 13 NYCRR 200.3 [i] [2], [3].)