OPINION OF THE COURT
Stephen A. Ferradino, J.
This action has arisen from a dispute over a franchise agreement. The franchisor was an entity named Business and Franchise Corporation of America (hereinafter BFCA), a Connecticut corporation, with headquarters within that State. Defendant Oakley was its founder, Chairman and Chief Executive Officer. The franchisee was Ambient Information Management Inc., also known as Group LTC, Inc. (hereinafter Ambient). Plaintiff, Thomas Reed, was the sole officer and shareholder of Ambient. The relationship between the parties started when Reed received a telephone call from a business broker from Delaware. The affidavits demonstrate that thereafter Gary Slattery, a representative of BFCA, contacted Oakley by telephone.* At the time of these negotiations, BFCA was not permitted by the Attorney-General of the State of New York to sell franchises in this State. A sale of unregistered franchises violates article 33 of the General Business Law. BFCA had applied for permission to offer and sell franchises, and received permission effective December 30, 1992. However, on July 22, 1992, the parties had already entered into a "Confidentiality Agreement” by which BFCA agreed to divulge to the plaintiff its proprietary and confidential information. That agreement was followed by a letter of intent and a deposit to BFCA to reserve New York territories. The letter, *657 dated September 30, 1992 and signed by Gary W. Oakley, and agreed and accepted by Thomas H. Reed, read, in part: "Upon notification of the effectiveness of the New York franchise offering, you will be given copies of the Offering Circular and Franchise Agreement. You will then have 10 business days to address questions or comments regarding the contracts. You will then have 10 business days from the date in which we have provided answers and information to accept contract(s) or decline to comment. If you decline, the deposit will be refunded to you.” The process leading to the franchise relationship proceeded pursuant to the terms of the agreement. On January 20, 1993, after the franchise was approved by the State’s Attorney-General, the plaintiff signed the franchise agreement. On November 15, 1994, BFCA discontinued business operations, causing the plaintiffs to lose some or all of their investment. This action followed.
The summons and complaint alleges that the actions of the defendants violated sections 683, 684 and 687 of article 33 of the General Business Law (Franchise Sales Act).
The defendant has now moved for an order dismissing the complaint on four grounds: a defense founded upon documentary evidence, the court lacks personal jurisdiction over the defendant, the complaint fails to state a cause of action, and the plaintiff has failed to name BFCA as a necessary party. The last ground has been mooted by the joinder of the corporation.
The first ground to be addressed is the alleged lack of personal jurisdiction, for if that ground has merit, the remaining grounds need not be addressed.
The United States Supreme Court has set forth clear guidelines to be applied to determine when the courts of one State can exercise jurisdiction over citizens of another. The starting point is, of course, the Due Process Clause of the Federal Constitution, which protects a citizen from binding judgments in another State when that citizen has established no meaningful contacts with that State (International Shoe Co. v Washington, 326 US 310). Due process is not offended if a person (or corporation) reaches out to the forum State and its residents, and purposefully directs activities toward the forum (Keeton v Hustler Mag., 465 US 770; Burger King Corp. v Rudzewicz, 471 US 462). Here, the defendants reached into New York State with a hope and expectation of granting the plaintiff a franchise. The facts recounted, supra, show that the defendant corporation sought out the individual plaintiff in New York, and carried on negotiations through correspondence. The *658 defendants’ potential for profit was palpable. Clearly, due process would not be denied if the defendants were bound by any judgment granted in this State. Therefore, the court concludes that jurisdiction has been effectively gained over the defendants.
Addressing next the motion to dismiss based upon documentary evidence, the defendants contend that, first, the complaint is insufficiently pleaded, and, second, that the escape avenues provided to the plaintiffs, and the full disclosure provided established a lack of willfulness necessary to a valid cause of action (Baker Boy v 35-63 82nd St. Corp., 166 AD2d 397).
Addressing the claim of lack of willfulness, the term is not defined in the General Business Law. However, generally, willfulness has been given alternative meanings. In certain contexts, willfulness is equated with malicious conduct or evil intent (Screws v United States, 325 US 91). In other contexts, willfulness means no more than voluntary and intentional, as opposed to inadvertent (Matter of Forbes, 181 AD2d 956). A fair reading of the Franchise Sales Act demands the adoption of the less sinister use of the word. The Act is to be liberally construed to provide the protection intended by the Legislature (Temple Marble & Tile v Union Carbide Marble Care, 162 Misc 2d 941, affd 214 AD2d 473). Requiring the franchisee to prove the higher standard of malice in failing to comply with the Act would apply a restrictive, not liberal, construction of the Act, and limit its effectiveness.
With the finding that the plaintiff need only show that the defendants intentionally violated the Act, the complaint, as pleaded, is technically sufficient.
The court finds no merit to the claim that because the franchisee was protected by the provisions permitting it to avoid the contract after the franchise was approved by the Attorney-General, the contract itself provided a defense. General Business Law § 681 (11) defines an offer to include "any attempt to offer to dispose of, or solicitation of an offer to buy, a franchise or interest in a franchise for value”. The conduct covered by the definition is not limited to the act of signing on the dotted line after the solicitation is made. Here, the solicitation and other negotiations were made prior to approval, and, by definition, amounted to an offer to sell prior to approval.
Finally, as pleaded, the complaint states a cause of action.
The motion to dismiss is denied.

 Reed states that he was called by Slattery. Oakley cryptically states that Reed "expressed an interest in acquiring a regional franchise from BFCA”. The court will accept Reed’s more candid explanation of how that interest was expressed, a call from Slattery.