OPINION OF THE COURT
William T. Glover, J.
Plaintiff TKO Fleet Enterprises, Inc. (hereinafter TKO) is in the business of providing dispatching, billing and bookkeeping services in the radio-dispatch luxury car transportation business. Defendants Mohammad Shahid (hereinafter Shahid) and Zia Khan (hereinafter Khan) entered into contractual relation *461 ships with TKO in 1997 and 1996, respectively, whereupon they obtained the right to participate in TKO’s two-way radio network in order to receive radio dispatches. Defendants Elite Limousine Plus, Inc., formerly known as Elite Car and Limousine Inc., and The Elite Group (collectively referred to herein as Elite) are business competitors with TKO. It is alleged that Elite and the other named defendants induced Shahid and Khan to breach their agreements with TKO and enter into similar agreements with Elite. TKO further alleges that defendants Shahid and Khan have induced or attempted to induce others to breach their agreements with TKO. TKO seeks to recover based upon claims of breach of contract and tortious interference with business relations. It is not disputed among the parties that the agreements entered into by Shahid and Khan with TKO, and subsequently with Elite, were in the nature of franchises, wherein TKO and Elite, as franchisors, contractually offered their services to drivers such as Shahid and Khan as the franchisees.
It is noted, initially, that plaintiff withdraws its fourth and fifth causes of action alleging unfair competition and prima facie tort. This withdrawal is untimely, inasmuch as it is made after a responsive pleading has been served, and the claims are, therefore, dismissed with prejudice. (CPLR 3217 [b].) Defendants’ motion for costs and fees, however, is denied.
The primary basis for the motion to dismiss stems from defendants’ allegation that TKO, as a franchisor, has violated article 33 of the General Business Law, known as the Franchise Sales Act, which regulates franchises in New York State. (General Business Law § 680 et seq.) Defendants assert that TKO is precluded from suing upon its contracts with Shahid and Khan because it has violated General Business Law § 683 (1), which states: “[i]t shall be unlawful and prohibited for any person to offer to sell or sell in this state any franchise unless and until there shall have been registered with the department of law, prior to such offer or sale, a written statement to be known as an ‘offering prospectus’ concerning the contemplated offer or sale, which shall contain the information and representations set forth in and required by this section.” While on the instant motion TKO “does not admit that it was not in compliance with section 683,” TKO did enter into an “Assurance of Discontinuance” with the Office of the Attorney General of the State of New York on November 24, 1997. This was the apparent result of a recent effort by the Attorney General’s Office to investigate various franchised businesses, whereupon numer *462 ous instances of failure to register with section 683 were discovered. (Kaufmann, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, General Business Law art 33, 1999-2000 Interim Pocket Part, at 37.) Pursuant to this agreement, TKO paid the sum of $48,000 in costs and penalties, and agreed to “refrain from such acts and practices” that violate section 683 of the General Business Law.
Defendants rely primarily on one case in support of their motion to dismiss, King Computer v Beeper Plus (1993 US Dist LEXIS 2707 [SD NY, Mar. 8, 1993, Patterson, J.]). In King Computer, Judge Patterson determined that a franchise contract offered by a franchisor who failed to register a prospectus with the Department of Law was void and unenforceable. The court reasoned that inasmuch as the regulatory purpose of the Franchise Sales Act was to protect franchisees from fraud or incompetence, “ ‘the public interest in the enforcement of contracts is clearly outweighed by the public policy behind the regulation.’” (King Computer v Beeper Plus, 1993 US Dist LEXIS 2707, *24, supra.) Therefore, defendants assert, if the contract is deemed void ab initio, then all of plaintiff’s causes of action arising from the alleged breach of the contract, to wit: the first, second, third, seventh, eighth, ninth, tenth and eleventh causes of action, must be dismissed.
To the extent that this court considers the rationale of King Computer (supra), it respectfully declines to follow the same. It is apparent that King Computer has not since been adopted by any court in construing violations of section 683. As one commentator has noted, King Computer is “unprecedented” and “unique nationwide” in, its reasoning as it is applied to franchises. (Kaufmann, Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, General Business Law art 33, at 381.) Moreover, the King Computer rationale is premised upon non-franchise-related cases. (Kaufmann, op. cit., at 381.) It has further been noted that King Computer troublingly suggests a rule whereby franchisors who fail to register “cannot enforce their New York franchise agreements — although their franchisees conceivably can.” (Kaufmann, op. cit., at 381.)
While it is apparent that no other court has ruled upon the issue of whether a contract in violation of section 683 is void, courts have analyzed related issues. In Matter of Southland Corp. v Attorney-General of State of N. Y. (148 Misc 2d 390), the court reasoned that the protective purposes of the Franchise Sales Act did not bar negotiations of the terms of the contract during the period that the offering prospectus was awaiting ap *463 proval from the Attorney General. (Matter of Southland Corp. v Attorney-General of State of N. Y., supra, at 394.) In fact, the court observed, “the statute does not purport to regulate the contractual relationship at all, or to authorize the Attorney-General to do so.” (Matter of Southland Corp. v AttorneyGeneral of State of N. Y., supra, at 396.) The Southland court determined that the purpose of the statute was served by requiring franchisors to supply prospective franchisees with “material information necessary to make an informed judgment concerning the offer * * * but does not ascertain the truthfulness of the information contained in a prospectus” or “regulate the substantive terms of the offer or sale.” (Matter of Southland Corp. v Attorney-General of State of N. Y., supra, at 394.) However, it has since been determined that while the statute may not be read to regulate the terms of the agreement, a franchisee will not be found to have waived or contracted away its rights and remedies under the Franchise Sales Act. (Temple Marble & Tile v Union Carbide Marble Care, 162 Misc 2d 941.)
It is significant that the Franchise Sales Act affords a statutory remedy to franchisees if the franchisor sells a franchise in violation of section 683. Pursuant to section 691 (1), a franchisee may sue for “damages and, if such violation [is found to be] willful and material, for rescission, with interest at six percent per year from the date of purchase, and reasonable attorney fees and court costs.” The courts have acted to promote the public policy underlying the Franchise Sales Act by protecting franchisees’ enforcement of these rights against noncomplying franchisors. (Reed v Oakley, 172 Misc 2d 655; Temple Marble & Tile v Union Carbide Marble Care, supra.) It is noted that the remedy of rescission is subject to a three-year Statute of Limitations. (General Business Law § 691 [4].) However, in the Assurance of Discontinuance agreed to by TKO in November 1997, TKO agreed “to make a recission offer, pursuant to section 691 (2) of the GBL, to each of the franchisees who complains, within (3) years from the date of this agreement, either to TKO or to the Department regarding TKO’s failure to disseminate a duly registered franchise prospectus.” Therefore, defendants Shahid and Khan are not left without a remedy for plaintiffs alleged statutory violation. It follows that, inasmuch as the statute provides a remedy for aggrieved franchisees, and is not intended to regulate the parties’ actual contractual relationship, this court does not accept defendants’ contention that an additional penalty, a nullification of the contract, be *464 read into the regulatory scheme. (See, Matter of Southland Corp. v Attorney-General of State of N. Y., supra.) Therefore, defendants’ motion to dismiss the first, second, third, seventh, eighth, ninth, tenth and eleventh causes of action on this basis is denied.
That branch of defendants’ motion seeking to dismiss plaintiffs claims with regard to violation of the covenant not to compete is denied. The covenant expressly states that it is not intended to restrict the franchisee from employment in the taxicab business, and provides that upon termination, franchisees may work as chauffeurs in the luxury car business. The covenant only seeks to restrict the franchisees from acting as principals, directors, officers or stockholders in any business competitive with plaintiffs within a 50-mile radius of Times Square for a period of one year. These terms are not so broad or burdensome so as to render the covenant invalid on its face. (Washington Sq. Inst. for Psychotherapy & Mental Health v Speciner, 259 AD2d 368; American Para Professional Sys. v Examination Mgt. Servs., 214 AD2d 413.)